# Wheeling.

## NEELY et al. v. JONES et al.

### Decided May 1, 1880.

1. A stranger, who pays the debt of another without his request or authority, cannot sustain a suit against the debtor, unless he has ratified the act of the stranger by promising to repay him or in some other manner.

2. If such payment by a stranger is neither authorized nor ratified by the debtor, it will not be held to be a discharge of the debt.

3. If such payment by a stranger is neither authorized nor ratified by the debtor, the stranger may sue the debtor at law in the name of the creditor for his own use; but the debtor may by pleading or relying on the payment of the stranger ratify it, and such ratification being the equivalent of a previous request, the debt will be thereby discharged, and the debtor will be liable to be then sued by the stranger for money paid for him at his request.

4. A stranger, who pays a debt without the request or authority of the debtor, when the payment is not afterwards ratified, may, if he chooses, bring a suit in equity stating this fact and praying, that, if the payment be not ratified by the debtor, the debt may be enforced in his favor as the equitable owner thereof, or, if the payment be ratified by the debtor, that the court will decree to the stranger the re-payment of the amount so advanced by him for the use of the debtor; and the court will give the one relief or the other prayed for.

5. The stranger, when he pays the amount of the debt to the creditor, may without the consent of the debtor take an assignment of the debt and enforce it against the debtor; and if, when he pays the amount, it is agreed between the creditor and him that the creditor will assign him the debt, though no actual assignment be made, the stranger will be regarded as the equitable assignee of the debt, and the transaction will be considered equivalent to the purchase of the debt.

80

| | |
|---|---|
| 16 | 625 |
| 35 | 172 |
| 16 | 625 |
| 38 | 395 |
| 16 | 625 |
| 39 | 617 |
| 16 | 625 |
| 42 | 144 |
| 42 | 227 |

1880
Special Term.

Neely et al.
v.
Jones et al.

| | |
|---|---|
| 16 | 625 |
| 46 | 377 |
| 46 | 468 |
| 16 | 625 |
| f47 | 154 |
| 47 | 788 |
| 16 | 625 |
| 54 | 476 |
| 16 | 625 |
| 55 | 223 |

1880
Special Term.

Neely *et al.*
v.
Jones *et al.*

6. If a sheriff, who has had or who has an execution in his hands, pays the debt to the creditor, whether he takes an assignment of the judgment or not, will have the same rights and remedies against the debtor that a mere stranger would have. But *quære*: Does not public policy forbid that such sheriff should have the same rights and remedies as against subsequent judgment-creditors, who have acquired liens on the debtor's lands, or against a purchaser of such lands for valuable consideration without notice that the sheriff set up such a claim.

7. If the court overrules a demurrer to a bill, and gives the defendant a certain time in which to answer the bill, it cannot properly order a reference of the cause to a commissioner, to ascertain the amount of the plaintiff's demand, till the time has elapsed which was given the defendant to answer ; nor can it then order such reference, if the answer is filed and denies all the facts on which the plaintiff's claim is based. If such answer be filed, no such reference can properly be made, till the plaintiff by evidence has proven that he has a demand against the defendant.

8. A creditor, who brings suit against a debtor to enforce against his lands a judgment-lien, should sue on behalf of himself and all other judgment-creditors excepting those made defendants, and he should make formally defendants in the suit all creditors who have obtained judgments in the courts of record in the county or counties in which the debtor owns lands sought to be subjected to the payment of the judgments, also all creditors who have obtained judgments in courts of record or before justices in any part of the State, and have had them docketed on the judgment-lien docket of said county or counties.

9. If all the judgment-creditors are not made parties to such a suit either formally or informally, and this is disclosed in any manner by the record, the Appellate Court will reverse any decree ordering the sale of the lands or the distribution of the proceeds of such sale.

10. But if all the judgment-creditors are made parties to such a suit informally by being called by publication before a commissioner under a decree of the court to present their judgments, then this Court would not reverse a decree ordering a sale of the lands of the debtor, or the distributing of the proceeds of such sale, merely because the record disclosed that some of the judgment-creditors had not been made formal defendants, who ought to have been so made, unless it appears that objection was made to the rendering of such decree in this account in the court below, before such decree was entered.

11. If in such a bill the creditor should fail to sue on behalf of himself and all other judgment-creditors, but the court should afford to all judgment-creditors an opportunity to have their judgments audited before a commissioner by directing a publication to be made, call-

ing on them to present their judgments for auditing, the Appellate Court will regard this as a creditor's bill, the same as if the plaintiff in his bill had sued on behalf of himself and all other judgment-creditors except those made defendants.

12. The assignor and assignee of a judgment may be properly made co-plaintiffs in a chancery suit to enforce the lien of it on the debtor's lands.

Appeal from and *supersedeas* to three decrees of the circuit court of the county of Harrison, rendered, the first on the 28th day of October, 1859, the second on the 5th day of January, 1876, and the third on the 2d day of June, 1877, in a cause in said court then pending, wherein Floyd Neely and others were plaintiffs, and Thomas S. Jones and others were defendants, allowed upon the petition of the said Jones.

Hon. Charles S. Lewis, late judge of the second judicial circuit renders the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case:

Floyd Neely, Adam, J. Gain, John Sherwood and Joseph Jeffrey in April, 1858, filed their bill in the circuit court of Doddridge county against Thomas S. Jones and Silas Cain. In this bill they state, that Gain recovered a judgment against Jones in the county court of Doddridge county in March, 1855, for $66.21 and interest thereon at the rate of fifteen per cent. per annum and costs. At the same time in the same court Sherwood recovered a judgment against Jones for $135.50 with interest at the rate of fifteen per cent. per annum and costs; and in November, 1855, in the same court Jeffrey recovered a judgment against Jones and Cain for $150.00 and interest and costs ; that on each of these judgments exetions issued, which were placed in the hands of the plaintiff, Neely, sheriff of Doddridge county; that on the execution on the first of these judgments Jones paid in two payments $25.26, on the second $40.00, and on the third $40.00 in two payments ; and Jones and Cain being both

insolvent the executions were all returned "no property found, out of which to make the balance of these executions;" that the sheriff, Neely, paid the balance on these several judgments to the plaintiffs in them; and that Jones owned one tract of land in said county of one hundred and fourteen and one half acres; and the sheriff, Neely, claims that having paid these several judgments he has a right to be substituted to the rights of his co-plaintiffs in said judgments; and he asks to have these judgments paid by a sale of this tract of land. Before the defendants appeared, the plaintiffs in October, 1858, filed an amended bill, in which it is alleged that at the several times the several payments were made by the sheriff, Neely, to his co-plaintiffs of the amounts of the balance on their several judgments, they severally in consideration of such payments agreed to assign and transfer to the plaintiff, Neely, their respective judgments against Jones and Jones and Cain, and such agreements to make such transfers constituted the inducement and the consideration for Neely to make these payments; and that in pursuance of these agreements assignments have been executed. They are filed with the amended bill, but bear no date.

The amended bill claims, that by these agreements the sheriff, Neely, had a right to resort to all the securities his co-plaintiffs had against the defendants, and to subject this tract of land of the defendant, Jones, to the payment of the balance on these judgments for his, Neely's, benefit.

To this bill and amended bill the defendants, Jones and Cain, demurred, and on October 28, 1859, the court rendered this decree:

"This day came the parties, by their counsel, and thereupon the defendants, by their counsel, appeared and filed their demurrer to the complainants' bill and amended bill, which was set down for argument, and the court having maturely considered the matters arising on the said demurrer, is of opinion and doth decree that the same

be overruled, and that the defendants answer the said 1880
Special Term.
Neely *et al.*
v.
Jones *et al.* bill and amended bill within sixty days; and, on motion of the complainant, it is adjudged, ordered and decreed that this cause be referred to one of the commissioners of this court to ascertain and report the amount due the complainant, F. Neely, on the debts mentioned in the papers in this cause, also the annual rents and profits of. the real estate mentioned and referred to in this cause or possessed by the defendants, together with its valuation, showing a full description of the same; that such commissioner also report such other matters as may be deemed pertinent by himself or required to be specially reported by any of the parties to this suit; that he also report such other liens, by judgment or otherwise, as exist against said real estate."

The commissioner gave the parties to this cause ten days' written notice that he would execute this decree on March 4, 1864. He published no notice to creditors, who had liens on this tract of land, to appear and present their claims. He executed the order in about ten days, and on March 15, 1864, he reported: That the balance due from Jones on the Gain judgment as of March 1, 1864, was $161.32 with interest at the rate of 15 per cent. per annum on $66.21, part thereof, till paid, and on the Sherwood judgment $290.33 with like interest on $106.35, part thereof; and that there was due from Cain and Jones on the Jeffrey judgment as of same date $108.46 with interest at the rate of six per cent. per annum on $79.21, part thereof, till paid. He reported that defendant, Jones, filed with him two orders amounting to $122.22, which he claimed as credits on the Sherwood judgment, which was objected to, and the orders were returned and the matter submitted to the court. The report states that Jones had owned this tract of one hundred and fourteen and one half acres of land in Doddridge county, whose annual rental value was, as agreed by the parties, $76.66⅔, and this land was conveyed by Jones on December 25, 1857, to

his sons, Wm. S. Jones and Aaron S. Jones, and the deed was recorded June 7, 1858. The commissioner also reports three additional judgments, held by others not parties to this suit: *Moses Jennings* v. *Thos. S. Jones,* a judgment by a justice of the peace on June 6, 1855, for $47.59 with interest on $27.59 from March 29, 1855, and on $20.00 from October 23, 1854, and costs, subject to a credit of $10; also *C. J. Stuart* v. *Thos. S. Jones,* a judgment by the county court of Doddridge on June 29, 1858, for $159.87, with interest on $75.00 from August 2, 1857, and on $84.87 from September 3, 1857, and costs; and *F. M. F. Smith* v. *Thos. S. Jones,* a judgment of the county court of Doddridge for $36.17 with interest thereon from December 3, 1855, and costs, subject to credits subsequently paid of $7.00, $5.00 and $3.72.

No depositions appear to have been taken before the commissioner in settling these accounts, but after the report had been returned, between the years 1866 and 1869, depositions were taken, which bore on the question as to what credits Jones was entitled to on the plaintiff's several judgments.

Floyd Neely, the plaintiff, deposed as follows : " The assignments from Sherwood, Gain and Jeffrey were made before or about the time of the institution of the suit brought by me against Jones, and after I had paid to each of them the amounts due to them—the judgments." He does not prove, nor is there any evidence in the case to prove, that any agreements were made between the parties in reference to these assignments at the time the payments were made by Neely to these parties. Thos. S. Jones excepted to the reading of Neely's deposition, because it was taken without notice ; but this exception was never acted upon by the court.

An answer of Thomas S. Jones to the original bill was sworn to April 21, 1865, and subsequently filed, but when filed the record does not show. The answer admits the plaintiff's judgments, and that Jones owned the tract of one hundred and fourteen and one-half acres in

Doddridge county, where the judgments were rendered. It claims that he has made sundry payments on these judgments, and for other reasons assigned was entitled to certain credits. He says, that the joint credits, to which he is entitled, will pay off in full these judgments, and he does not admit that any of them remain unpaid by him in whole or in part, nor that the complainant had paid them to the judgment-creditors. An amended answer, which on its face seems to be an answer to the bill and amended bill, is copied in the record, though it was not filed by leave of the court, nor is there any order that recognizes it as ever filed. Among other things it says the respondent does not admit the pretended agreement to assign these judgments, nor that they constituted the consideration for the payments made by Neely. This amended answer was sworn to June 5, 1868.

A second amended bill also appears copied in the record ; but when it was filed does not appear. Its first recognition by the record as in the cause is in a decree of January 5, 1876; but as it was addressed to the judge of the circuit court of Doddridge, it is presumed it was put into the papers in the cause prior to December 31, 1867, when the cause was by consent removed to the circuit court of Harrison, and where the death of Aaron S. Jones, a party first made a defendant in this second amended bill, was suggested, and the cause was revived in the name of his father, said Thomas S. Jones, as his sole heir. The report of the commissioner, filed March 15, 1864, had stated, that the tract of land sought to be sold in this suit had been conveyed December 25, 1857, by Thomas S. Jones, the defendant, to his sons, William S. Jones and Aaron S. Jones. This amended bill number two alleges, that this deed was voluntary and fraudulent, and asks to have it declared void, and that these sons of Thomas S. Jones be made parties defendant. There is an answer of Thomas S. Jones also copied in the cause, though when filed does not appear, which

seems to be an answer to their second amended bill. It denies all fraud, and says that this deed was made for a valuable consideration. The names of these two sons of Thomas S. Jones do not appear in any manner in the record except in this second amended bill, which was sworn to July 4, 1866.

Although the commissioner's report of March 15, 1864, expressly reported three judgments as liens on the land sought to be sold, which were judgments in favor of three persons not parties to the suit; and though one of these judgments was a lien on this land older than one of the plaintiff's judgments, yet these three persons were none of them ever made parties to the suit, and no notice was taken of their rights by the court below. On May 21, 1874, more than ten years after this report was made, the defendant, Thomas S. Jones, filed exceptions to it not necessary to be specified. On January 5, 1876, the circuit court of Harrison rendered this decree :

" This cause came on this day upon the papers heretofore read therein, bill and amended bills, answers thereto by defendant, Thomas S. Jones, and replication thereto, and bills taken for confessed by the other defendants, depositions and exhibits, and on the report of master commissioner Knight and exceptions thereto, was argued by counsel. On consideration whereof, the second and third exceptions are overruled, the fourth exception is sustained, and so much of the first exception as relates to the credits of $21.24 paid the 26th of June, 1855, and $4.02 paid the 5th of October, 1856, is sustained; and as to the residue thereof, the same is overruled. And the court, proceeding to correct the said report in relation to the matter sustained in the said second exception, and ascertain and determine the true amount of the said judgment of Adam J. Gain, finds the same, on the 1st of March, 1864, to amount to $53.81 principal, and $66.24 interest, after crediting the same with the two sums of $21.24 and $4.02 referred to in the first bill of exceptions; and it further appears to the court from the said report of the said

commissioner, that on the 1st day of March, 1864, after correcting in the manner aforesaid, there was due upon the three judgments in the bill named the aggregate sum of $468.84, of which sum $239.43 is principal, and the residue interest and costs, and that the said judgments are liens upon the said tract of one hundred and fourteen and one half acres of land in the bill and report of the commissioner mentioned; thereupon, it is adjudged, ordered and decreed, that the defendant, Thomas S. Jones, pay to the complainant, Floyd Neely, the said sum of $468.84, with interest on $239.43, parcel thereof, at the rate of fifteen per cent per annum from the 1st day of March, 1864, until paid, and his costs by him herein in this behalf expended. It is further adjudged, ordered and decreed, that unless the said defendants, or some one for them, pay to the complainant, Neely, the amount hereinbefore decreed to him within ninety days from this date, that Caleb Boggess and Lewis Haymond, who are hereby appointed commissioners for the purpose, with leave for either one to act, do proceed, at the front door of the court-house of Doddridge county, on some court-day, to sell the said tract of land in the bill and proceedings mentioned, at public auction to the highest bidder, for so much cash in hand as will pay the costs of this suit and expenses of the sale, and for the residue of the purchase-money in six, twelve and eighteen months from date, with interest thereon from date, taking bonds or notes from the purchaser, with good personal security, and retaining a lien on the land as a further security for the payment; said sale to be first advertised for four weeks prior thereto by notice posted at the front door of the court-house of Doddridge county, and published in some newspaper in the said county, if there be one published therein. If no such paper is published therein, then the said notice to be published in some newspaper published in the county of Harrison, and report their proceedings to court for final decree therein."

No report of the sale made under this decree is copied

into the record ; but on June 2, 1877, the court rendered this final decree :

"Lewis Haymond, one of the commissioners heretofore appointed for the purpose, having made and filed his report of the sale of the land in the bill and proceedings mentioned, whereby it appears that the complainant, Floyd Neely, became the purchaser at the price of one thousand dollars ($1,000.00), and there being no exceptions taken to the said report, it is adjudged, ordered and decreed that the same be confirmed and the commissioner allowed $29.00 for making said sale and $17.77 for costs of advertising the same. And it appearing to the court that the purchase-money of said land after abating the sum hereinbefore allowed is not sufficient to satisfy the complainant, Neely, the amount hereinbefore decreed to him, it is ordered that the three bonds given by him for the purchase-money of the said land and filed with the report of the special commissioner Haymond be cancelled, and $832.00, the amount thereof, be credited upon the amount of the decree hereinbefore rendered in favor of the said Neely as of the date of said sale, and for the residue of the said decree of the 5th of January, 1876, rendered herein, after crediting the same with $1,000.00, less the allowance herein made to the commissioner as of the 21st day of May, 1877, the complainant, Neely, has leave to sue out execution against the said Thomas S. Jones. It is further adjudged, ordered and decreed that Lewis Haymond, who is hereby appointed a commissioner for the purpose, do execute and acknowledge a deed of conveyance to the said Floyd Neely for the tract of land in the bill and proceedings mentioned, with covenants of special warranty, and that he be allowed $3.00 therefor to be taxed in the bill of costs. It is further adjudged, ordered and decreed that a writ of *habere facias possessionem* be awarded to the said Floyd Neely for the said tract of land hereinbefore mentioned.

From and to this decree the defendant, Thomas S. Jones, obtained an appeal and *supersedeas* to this court.

*T. W. Harrison,* for appellant, relied on the following authorities:

8 Leigh 598; 4 Rand. 445; 2 Tuck. Com. 136; Hob. 106; 1 Saunders 2, 67 (1); 3 Myl. & K. 190; 1 Story Eq. Juris. §449 (d.); 27 Gratt. 740.

*C. Boggess,* for appellees, cited the following authorities:

10 Gratt. 1; Code ch. 134 §§5, 6; 9 Gratt. 64; 2 W. Va. 1.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first enquiry presented by the record is, whether the original bill in this cause was fatally defective on demurrer. This bill states that Neely, the sheriff of Doddridge county, paid to the plaintiffs in several judgments against the defendant, Thomas S. Jones, on which executions had issued, the amount of those judgments; and the defendant, Thomas S. Jones, having a tract of land, on which these judgments were a lien, Neely, the sheriff, by this bill claims that he is entitled to be substituted to the rights of the plaintiffs in these judgments, who were co-plaintiffs with him in this cause, and to enforce the same out of said lands. The judgments were rendered in 1855; and this suit was instituted in 1858.

It is well settled that a stranger, who pays the debt of <sup>Syllabus 1.</sup> another without his knowledge and authority, cannot sue the debtor for money paid for his use, unless the debtor has ratified the act of the stranger by promising to repay him the amount, or in some other manner. See *Beach* v. *Vanderburgh,* 10 Johns. 361; *Jones* v. *Wilson,* 3 Johns. 434; *Menderick* v. *Hopkins,* 8 Johns. 436; *Overseers of Walkill* v. *Overseers of Mamahating,* 14 Johns. 87; *Lipscomb's adm'r* v. *Littlepage,* 1 H. & M. 453; *Harrison* v. *Hicks,* 1 Porter (Ala.) 423; *Carter* v. *Black,* 4 Dev. & Bat. 425. These cases show, that a sheriff or other officer, who has or has had an execution process in his hands, if he pays the judgment or claim without the

1880
Special Term

Neely et al.
v.
Jones et al.

Syllabus 2.

request or authority of the defendant, where it is not afterwards approved or ratified by the defendant, is regarded precisely as any other stranger would be regarded and he can not bring an action of *assumpsit* to recover of the defendant the amount so paid by him.

The next enquiry is: Does such a payment discharge and satisfy the original debt, so that no suit can thereafter be brought for the original debt, or if it be an execution, so that it cannot afterward be enforced in any manner? There have been cases in which it has been stated by the court, that such a payment by a stranger absolutely extinguished the debt; and the inference to be drawn from them is, that the debt is by such unauthorized payment utterly extinguished at law or in equity. See *Sanford* v. *McClean*, 3 Paige 122; *Banta* v. *Gormo et al.*, 1 Sandf. 385, 386; *Douglass* v. *Fagg*, 8 Leigh 601, 602. But these views are not in other cases approved; and it has been decided, that a payment of a debt by a stranger without the authority expressed or implied of the debtor is no discharge of the debt, unless the payment is subsequently in some manner ratified by the debtor, but whenever ratified, it will relate back to the date of the payment and have the same effect as if it had been expressly authorized by the debtor, and therefore it may be ratified even after suit is brought upon it; and the debtor's relying upon it as a payment is such a ratification. See *Simpson* v. *Eggington*, 10 Exchq. 845, 848; *Kemp et al.* v. *Balls*, 10 Exchq. 610; *Belshaw* v. *Bush*, 11 C. B. (73 Eng. Com. Law.R.) 207; *Whiting, use of Sun Mutual Insurance Co.* v. *Independent Mutual Insurance Co.*, 15 Md. 314; *Leavitt and Lee, ex'rs of Hans Wilson* v. *Morrow*, 6 Ohio St. 71; *Webster and Smith* v. *Wyster*, 1 Stew. (Ala.) 184.

From these decisions it would seem to follow as a necessary consequence, that, if after the stranger pays a debt the debtor ratifies the payment, as by relying on this payment as a payment when sued upon the debt, or in any other manner, he would be liable in an action of

*assumpsit* brought by the stranger against him for money paid at his request for his use, the subsequent ratification being equivalent to a previous request. See *Lipscomb, adm'r,* v. *Littlepage,* 1 H. & M. 453.

But if the debtor instead of ratifying the payment of his debt by the stranger should repudiate this payment by a stranger of his debt, which he might well do, because he disputed that he was bound for the original obligation, or because he himself had paid it, or did not for any reason owe the debt, and for many other conceivable reasons, then the payment by the stranger could not operate as a discharge of the debt, but the debt would still continue to have an existence after the payment by the stranger. The legal right of action would of course remain in the original creditor, and the suit at law would necessarily be in the name of the original creditor. But as the original creditor had received full payment of the claim from the stranger, it seems to me that he would be under an implied obligation to transfer the debt to the stranger, after the debtor would not ratify the payment and thus extinguish the debt. For if under these circumstances a court of equity would not regard the stranger as the equitable owner of the debt, the result would be that the creditor could make it out of the debtor, after it had been paid in full by the stranger; and thus the creditor would be twice paid his debt, while the stranger would have no one to whom he could look for the repayment of what he had paid out. This result would not only be inequitable, but contrary to the obvious implied understanding between the creditor and the stranger when the debt was paid. It is obvious that the stranger did not mean to present the creditor with the amount paid, for it was made as a payment of the debt, and not given as a present. And if it can not operate as a payment, because of the debtor's refusal to recognize it as a payment, the general object, which the parties had in view, would under such circumstances be carried out to the extent to which it would under such circum-

stances be capable of being carried out, by the creditor assigning the debt to the stranger. And under these circumstances, it seems to me, a court of equity would, when the debtor refused to ratify the payment, imply that there was such contract, and the rights of the parties would be the same, as though the agreement had been originally, that the payment by the stranger to the creditor shall operate as a full discharge of the debt, if the debtor would ratify it as a payment, and if he would not, and it could not therefore so operate, then that the creditor would transfer to the stranger his right to the debt.

So understood, if the payment was not ratified by the debtor, the stranger, who would then be the equitable owner of the debt, could sue at law for it in the name of the original creditor for his own use. It is true that the debtor might defeat this action by pleading the payment made by the stranger to the creditor as a discharge of the debt. For he would have the right, as we have seen, to ratify this payment even after suit; nor would his right so to do be affected by his refusal before suit to so ratify it; for a principal may, after he has refused to ratify the act of a person acting as his agent, change his mind and ratify the act; and whenever he does so, it relates back to the doing of the act, and operates just as if he had previously authorized the doing of the act. But if the debtor thus defeated the action, it would follow that the stranger could then bring against him an action of *assumpsit* for money paid to his creditor at his request; for this ratification would be the equivalent of a previous request to the stranger to pay the debt to his creditor. If however instead of bringing a suit at law in the name of the original creditor for his use the stranger chose, he could institute his suit in equity as the equitable owner of the debt; and if the debtor should deprive ʜ of an equitable right to the debt by answering that hᴇ ⁿ ratified and approved the payment of the debt by tʜ stranger, and it was then extinguished, this very answer would show the liability of the debtor to refund

to the stranger the amount he had paid for him to the creditor with interest; and a court of equity having the parties all before it and the facts disclosed by the pleadings would not turn the stranger over to another common law suit against the debtor, but, to avoid multiplicity of suits, would administer justice by at once decreeing the payment to the stranger of the amount he had paid for the debtor and the interest thereon, unless some just defence or sets-off appeared.

These conclusions are, I think, not only the legitimate result of the authorities I have before cited, but are, I think, sustained by other decisions more directly. It is true, that it has been frequently decided, that it is only in cases where the person paying the debt stands in the situation of a surety, or is compelled to pay in order to protect his own interests, that a court of equity substitutes him in the place of the creditor as a matter of course without any agreement to that effect. See *Jannes* v. *Stephens*, 2 Pat. & H. 11; *Douglass* v. *Fagg*, 8 Leigh 588, 602; *Swann* v. *Patterson*, 7 Md. 164; *The Bank of the United States* v. *Marston*, 2 Broch. 254; *Burr* v. *Smith*, 21 Barb. 262.

But it must not be inferred from these decisions that the right of substitution arises from a supposed contract between the principal debtor and his surety. As Chancellor Kent says in *Hays* v. *Ward*, 4 Johns. Chy. 130, "This doctrine does not belong merely to the civil law system; it is equally a well settled principle of the English law, that a surety will be entitled to every remedy, which the principal creditor has, to enforce every security, and to stand in the place of the creditor, and have those securities transferred to him, and to avail himself of those securities against the debtor. This right stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution against another." Lord Brougham speaking of this right of substitution in *Hodgson* v. *Shaw*, 3 Myl. & K. 183, said: "The rule here is undoubted, and is founded

on the plainest principles of natural justice, that the surety paying off the debt shall stand in the place of the creditor, and have all the rights he has for the purposes of obtaining his reimbursement. It is scarcely possible to put this right of substitution too high ; and the right results more from equity than from contract or *quasi* contract, unless in so far as the known equity may be supposed to be imported into any transaction, and so to raise a contract by implication."

The right of substitution therefore does not arise from any supposed contract between the principal debtor and his sureties ; and one is entitled to avail himself of this right, who is compelled to pay a debt for which he is not primarily responsible, though he may not stand in relation to the principal debtor strictly as a security ; as when he guarantees a debt, for which he is not bound, at the instance of the creditor and not the debtor, and though this guarantee was made without the knowledge or consent of the debtor. See *Mathews* v. *Aiken*, 1 Com. 595 ; *Peake* v. *Estate of Darwin*, 25 Vt. 32 ; *Carter* v. *Jones*, 5 Ired. Eq. 197 ; *Elhiton* v. *Newman*, 8 Harris (20 Pa. St.) 281.

It is true that the syllabus in *Carter* v. *Jones*, 5 Ired. Eq. 196, states in broad terms, that "a person, who pays off a bond due to a creditor without the request of the debtor express or implied, cannot recover from the debtor at law. But in equity he is considered as the equitable purchaser of the bond, and is therefore entitled to relief against the debtor." But this statement is not justified by the decision actually rendered in that case, and is not supported by the authorities. In that case the stranger, when he paid off the bond, was compelled to pay it off, having previously guaranteed its payment, it is true without the consent or knowledge of the original obligor. It really therefore resembles closely the case of *Mathews* v. *Aiken*, 1 Com. 595.

Syllabus 5.

The true basis of these decisions is, that a stranger may purchase a debt of a creditor without the knowledge

or consent of the debtor; and the debt may be expressly assigned to the stranger; and if it is the design of the stranger to purchase the debt, and if the money is paid by him and received by the creditor with the design that it shall operate as a ·purchase, it will so operate, and the transaction will be regarded as an equitable transfer of the debt; and where the stranger has guaranteed the debt at the instance of the creditor, and afterwards pays on his guarantee the amount of the debt to the creditor, there will under these circumstances be an implied contract to transfer the debt, which will operate very much as a substitute, though it has a somewhat different origin, that is, an implied contract which is regarded as an equitable assignment. But where a stranger simply pays a debt, the presumption is that he expects the debtor to repay him the money he has advanced, and no implication can justly arise, that from the mere payment it was understood or impliedly agreed with the creditor that the debt and all its securities should be transferred absolutely to him. If the debtor refuses to ratify the payment which the stranger has made for him, then, as the debt is really unpaid and belongs still legally to the creditor, a fair implication arises that it is held for the benefit of the stranger. It has accordingly been frequently asserted by courts, that a stranger paying the debt of another will not be subrogated to the creditor's rights without an agreement to that effect. See *Swann* v. *Patterson*, 7 Md. 164; *The Bank of the United States* v. *Marston*, 2 Broch. 254; *Burr* v. *Smith*, 21 Barb. 262; *Douglass* v. *Fagg*, 8 Leigh 602.

Of course the stranger, at the time he pays to the creditor the amount of the debt, may take an assignment of it without the consent or knowledge of the debtor; and if, when he pays the amount, there be an express agreement that the debt is to be assigned to the stranger, this would amount to an equitable assignment of the debt, though no formal assignment was ever executed; for this understanding shows, that the stranger did not pay

81

1880
Special Term.

Neely et al.
v.
Jones et al.

Syllabus 6.

the debt, but really purchased it, which of course he could do without the consent of the debtor. But unless such express agreement is proven, the payment of the debt by the stranger, if subsequently ratified by the debtor, from the time of its ratification extinguishes the debt at law and in equity. But if the debtor refuses to ratify the payment made by the stranger, the debt is not extinguished in law or equity. Its legal existence continues in the original creditor; but the equitable title to the debt vests in the stranger.

It has been said that public policy forbids that a sheriff or other officer, who pays a judgment, on which the execution is or has been in his hands, should be placed on the footing of a stranger who pays the judgment, and that such sheriff or other officer, whether he takes an assignment of the judgment or not, is not entitled to the benefit of the lien created by the judgment on the debtor's lands, at least as against other creditors having liens by judgment or otherwise, or as against purchasers of the land for valuable consideration without notice that the sheriff had such claim. See *The People* v. *Onondaga*, 19 Wend. 79; *Clevinger* v. *Miller*, 27 Gratt. 740; *Feamster et al.* v. *Withrow, trustee et al.*, 12 W. Va. 659. I cannot see that public policy forbids the sheriff, who pays a judgment under these circumstances, to occupy the same position so far as the debtor himself is concerned, and to have against him the same rights, as a stranger would have who paid the judgment, whether there was an equitable assignment made at the time or not, his rights varying according to the facts as do those of the stranger; and there is nothing in either of these cases, which would lead to the conclusion, that as against the debtor himself the sheriff would not occupy the same position and have the same rights as a stranger under the same circumstances.

In the case before this court the other judgment-creditors of the debtor have not been made parties to this suit in any manner; and they not being before the court,

it is not proper to express any opinion on the question, whether the sheriff because of his paying these judgments or of his taking an equitable assignment of them can enforce them for his use against the lands of the debtor to the prejudice of what would otherwise be the rights of these judgment-creditors on the lands of the debtor. In the case of *Clevinger et al.* v. *Miller,* 27 Gratt. 740, it was decided, that "a sheriff or other officer who pays an execution in his hands for collection, without an assignment at the time of the judgment on which it is founded, or of the debt, is not entitled to be subrogated to the liens of the creditor whose debt he has paid, as against other creditors having liens by judgment or otherwise." In the case of *The People, ex relatione Luther* v. *Onondaga, C. P.,* 19 Wend. 79, there had been an actual assignment of the judgment to the sheriff, when he paid the amount to the plaintiff, and yet under the circumstances of that case the court held, the rights of the sheriff as the assignee of this judgment to make the same out of the real estate of the debtor must yield to the right of subsequent judgment-creditors to first make their debts out of such real estate. In the absence from this court of the subsequent judgment-creditors it is not proper for us to determine, whether these decisions are properly applicable to this case, or whether the law is correctly laid down in these cases.

I will now apply the law to the case before us. The original bill states, that Neely, the sheriff of Doddridge county, paid for Jones and for Jones and Cain to the several judgment-creditors certain judgments, which had been rendered against Jones and against Jones and Cain, and he asks to be substituted to the rights of these judgment-creditors, who were made co-plaintiffs, and to be decreed to have a lien on a certain tract of land of Jones's, and asks that this lien may be enforced by a sale of this tract of land to pay these judgments. The bill does not state, that these payments of these judgments by the sheriff Neely had not been ratified or approved by the

1880
Special Term.

Neely et al.
v.
Jones et al.

debtors, Jones and Cain. If they had been so ratified and approved, the plaintiff could on the facts stated in the bill have no right to bring this chancery suit, for by the statements of the bill, if the payment of their judgments by the sheriff had been ratified by the debtor, the judgments would be all satisfied in law and equity, and the sheriff, Neely, would have only had a right to sue at common law Jones and Cain for the monies he had paid for them, and which must be held to have been paid at their request, if the payment had been afterwards ratified. It was therefore necessary, in order that the original bill should be good, to allege that these payments by the sheriff were made without the request or authority of the judgment-debtors, and that they had never ratified the payments, and so the judgments were unsatisfied and for the use of Neely, the sheriff. With these allegations in it the original bill would have been good; but its prayer too should have been modified. It should have prayed, that if the defendants did not by their answers ratify these payments, the land should be sold to pay off these judgments, and if they did by their answers ratify these payments, then that there should be formal decrees in favor of the sheriff, Neely, for the amount of monies he had so paid for the defendants. But as there was no allegation in the original bill, that these payments had not been made with the approval of the defendants, or that they had never ratified them, the demurrer to this original bill should have been sustained. Before the defendants appeared at April rules, 1859, the plaintiffs filed an amended bill, in which it was alleged, that at the time the sheriff, Neely, paid the several judgments, the judgment-creditors severally agreed to transfer and assign to him their several judgments, and such agreements constituted the inducement and consideration to make the payment to them severally. And that afterwards they were accordingly so transferred. The prayer of this amended bill like the prayer of the original was, that the tract of

Syllabus 4.

land of the defendant, Jones, might be sold to pay these

judgments. There is no allegation that the assignments were actually made prior to the institution of this suit, nor was it necessary to make such allegation, for the agreement to transfer these judgments, if Neely would pay the amount due on them, when this amount was paid, operated as an equitable assignment of these judgments. It was no fault in the amended bill to make the judgment-creditors and their assignee, Neely, co-plaintiffs in the suit. An assignor and an assignee may unite in a suit as co-plaintiffs to recover a debt, *Ryann* v. *Anderson*, 3 Mad. 175. Nor did the amended bill attempt, as is claimed, to so vary the suit as to make in effect a new and different cause of action from that attempted to be set forth in the original bill. Both bills sought to subject the tract of land belonging to the defendant, Jones, to pay the same judgments and for the benefit of the same party. The court therefore in the decree of October 28, 1859, properly overruled the demurrer to the amended bill ; but the court erred in overruling the demurrer to the original bill. The order of October 28, which overruled the demurrer to the amended bill, properly gave the defendants sixty days within which to answer the amended bill ; but all the other proceedings in the cause are entirely irregular.

*Syllabus 12.*

This order of October 28, 1859, on the plaintiff's motion, without the answers being filed, or given, without awaiting the sixty days, directed a commissioner to ascertain the amount due to the plaintiff, Neely, and also such other liens as existed against this tract of land. The commissioner served a notice on none but the parties to the suit, and did not advertise for others, who had liens on this land, to present their liens. But though no notice of these proceedings was published, yet the commissioner reports, that there are three other judgments against the defendant, Jones, which are liens on his land ; one in favor of Moses Jennings, one in favor of F. M. F. Smith, and a third in favor of C. J. Stuart, one of which

*Syllabus 7*

is a prior lien to one of the judgments audited in favor of the plaintiff, Neely. No evidence of any sort appears to have been taken before the commissioner in settling the accounts between the plaintiff, Neely, and the defendant, Jones; but it appears after the report had been returned, numerous depositions were taken in reference to credits claimed by Jones. He filed his answer to the original and amended bills also long after this report had been made, in which he denies all the material allegations contained in them. The cause was then by consent removed to the circuit court of Harrison county. There is copied into the record an amended bill number two, as it is called, which alleges, that after the plaintiffs obtained all their judgments, Thomas S. Jones on December 25, 1867, conveyed the tract of land, sought to be charged with the payment of these judgments, to his two sons fraudulently and without any consideration ; and it prays that this deed may ·be set aside. There is also in the papers in the cause an answer by Thomas S. Jones to this amended bill, denying all fraud and alleging that this deed was made for a valuable consideration, and also an amended answer to the original and first amended bill ; but there is no order of the court authorizing the filing of this second amended bill or this answer thereto, and it is impossible to tell when they were filed.

The commissioner in his report of March 15, 1864, stated that Thomas S. Jones had on December 25, 1857, conveyed this tract of land to his sons, and it is presumed therefore, that this amended bill was put in the papers of the cause after that date. A decree entered January 5, 1876, speaks of the cause being heard on amended bills and answers thereto, and this is the only recognition in the record of the existence of this bill and answer. But this report of March 15, 1864, stated also, that there were three other judgment-creditors, two of whom held judgments of the county court, in which the suit was brought, and where the land sought to be sold lay, who had liens on this tract of land, and the amount of their

liens were also reported. Yet the plaintiffs in their amended bill making the sons of Thomas S. Jones parties defendant do not make these creditors, reported to have liens on this tract of land, parties defendant, and though by the commissioner's report the lien of one of these parties was prior in time and superior obviously to a portion of the plaintiffs' claim, yet the court in its decree of January 5, 1876, after correcting the report in some particulars, in which it had been excepted to so far as it related to the plaintiffs' debt, expressly sustains the exception to this report so far as the three other judgments were concerned, because these judgment-creditors were not parties to the suit, and then proceeds to direct the sale of the tract of land to satisfy the debts of the plaintiffs only, and after the sale was made by the decree of June 2, 1877, it applied the whole proceeds of the sale of the land to the payment of the plaintiffs' debt only.

It would certainly have been improper for the court to render any decree in favor of these three persons, who were not parties to the suit either formally or informally. See *Snyder* v. *Brown et al.*, 3 W. Va. 143. But it is equally obvious, that as they had an interest known to the court in the proceeds of the sale of the tract of land about to be sold, the court could not render a decree, ordering the sale and afterwards disposing of the proceeds, without their having been made parties in some way to the cause. It has been questioned, whether it was necessary to make persons, occupying the position these persons did, formally parties to such a suit, and whether it was not sufficient for a party, who files a bill to subject the land of a living debtor to the satisfaction of a judgment, to make all other judgment-creditors parties to the suit by the plaintiff suing on behalf of himself and all other judgment-creditors. In this Court it would seem to have been held in the case of *Hoffman et al.* v. *Shields*, 4 W. Va. 490, that it was necessary to make all such judgment-creditors formally parties. In this case there was another error fatal to the appellees and the

court does not appear to have maturely considered this question. We cannot follow to its full extent the apparent decision in this case, because the judgments of all the courts in the State, as well as the judgments of all justices of the peace, are liens on the lands of the debtor, and it would be impracticable, if not impossible, for the plaintiff, who desired to enforce his judgment-lien, to make all the judgment-creditors in the State formal parties defendant in his bill, as he could not ascertain who they were. They being an undefined class having a like interest with the plaintiff, he ought on general principles to be allowed to sue on behalf of himself and all other judgment-creditors without making them formal parties.

But as it is practicable for the plaintiff by the use of ordinary diligence to ascertain all creditors who have judgments rendered by the courts of record in the counties, in which lie the lands, which he seeks to subject to sale, and also all creditors who have obtained judgments from courts of record or from justices in any part of the State and had them docketed on the judgment lien docket of said county or counties, of his living debtor, we see no reason, why he should not be required to make all such judgment-creditors formal parties defendant, the reason for permitting the filing of a creditor's bill not applying to such judgment-creditors ; and if he should omit to make any such judgment-creditor a formal party defendant, unless objection be made specially to proceeding in the cause till such party is made a formal defendant by the amendment of the bill, this court would not regard such omission as a ground for reversing a decree of a circuit court, if the bill had been brought on behalf of the plaintiff and all other judgment-creditors, as such omitted party defendant would be regarded as an informal party plaintiff. Even if the creditor had omitted to state in his bill, that he sued on behalf of himself and all other judgment creditors except those made defendants. Yet, if he proceed just as if he had made this allegations, and in the order of reference the

*Syllabus 8.*

*Syllabus 9.*

*Syllabus 11.*

1880
Special Term.

Neely et al.
v.
Jones et al.

commissioner was directed to call before him by publication all persons having liens on the land by judgment, and audit their claims, this court would regard this as substantially the same thing, or though the plaintiff had in his bill stated that he sued on behalf of himself and all judgment-creditors except those made defendants. The bill in *Marling* v. *Robrecht et al.*, 13 W. Va., 440, failed to state that the suit was brought on behalf of the plaintiff and all other judgment-creditors, but the decree of the court calling them before the commissioners by publication was treated as making this a good creditor's bill. In the present case the three judgment creditors, not parties to this suit, are not informal parties plaintiffs, the bill not being filed on behalf of the plaintiff and all other judgment-creditors, the court therefore ought not to have rendered the decree of January 5, 1876, based on a commissioner's report made when the parties, directly interested in this report, were not before the court in any manner.

It is of course unnecessary to consider the exceptions to the report, or whether the report would have been liable to exceptions, had the proper parties been before the court. When the order of reference was made, even the legal owners of the tract of land sought to be sold were not parties to the suit. The decree of October 28, 1859, under which this report was made, so far as it referred the cause to a commissioner at all, was equally erroneous. For the demurrer to the plaintiffs' bill and amended bill having been overruled, no other order or decree could properly be made in the cause, till the time had elapsed, within which the court had ordered the defendants to answer the bill, yet this decree on its face shows, that the court proceeded immediately on overruling the defendants' demurrer to order this reference to a commissioner. This order could not have been properly made, till the sixty days had elapsed, within which the defendants were allowed to file their answer; and if the material facts in the bill and amended bill had been

Syllabus 7

denied by the answer, no order of reference should have been made, till the plaintiffs prove they had a valid claim, and if they failed to do so, this suit should have been dismissed without making any order of reference.

I am therefore of opinion, that the whole of the decree of October 28, 1859, except that portion of it which overrules the demurrers of the defendants to the plaintiffs' amended bill, must be reversed, set aside and annulled ; and also the decree of January 5, 1876, and also the whole of the decree of June 2, 1877, except that portion of it which confirms the sale and report thereof made by commissioner Lewis Haymond, which under the provision of section eight of chapter one hundred and thirty two of the Code of West Virginia cannot be set aside because of the reversal of the decree ordering the sale. And this Court proceeding to render such decree as the court below ought to have rendered doth sustain the demurrer of the defendants to the original bill, and doth remand the cause to the circuit court of Harrison county with instructions to permit the plaintiffs within a reasonable time to be fixed by that court to amend their bill, and sue on behalf of themselves and all other judment-creditors of Thomas S. Jones, and to make as defendants to the same Moses Jennings, F. M. F. Smith, C. J. Stuart, William S. Jones and Thomas S. Jones as sole heir at law of Aaron S. Jones, deceased, and all other proper parties, and with directions to cause the amount due from Floyd Neely, the purchaser of the land sold by Lewis Haymond, commissioner, to be collected and paid into the court and then a proper deed to be made to said Floyd Neely for said land, the purchase-money to be disposed of by the court to whatever parties may hereafter appear to be entitled thereto ; and further to proceed with this cause according to the principles laid down in this opinion, and further according to the rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREES REVERSED.    CAUSE REMANDED.