# CHARLESTON.

JOHN MARINACK *et al. v.* KENNA BLACKBURN *et al.*

Submitted March 20, 1923.    Decided April 17, 1923.

1.   DEEDS—*Assumption by Grantee, a Married Woman in Deed From Husband, of Prior Mortgage or Lien as Part of Consideration Enforceable in Equity Against Her.*

    The assumption by a grantee, a married woman, in a deed from her husband to her, of a prior mortgage or lien as a part of the consideration, constitutes a binding contract between the parties, enforceable in equity by the husband or by his assignee or by any one who may be required thereafter to perform her promise to pay.  (p. 589).

2.   MARRIED WOMEN—*Act of 1893 Enables a Married Woman to Contract Subsatntially as if a Femme Sole as to Real and Personal Estate Then or Thereafter Acquired.*

    Since the enactment of the so-called married woman's act of 1893, removing many of her disabilities, she has the power to contract and to thereby bind her separate real and per-

sonal estate then or thereafter acquired substantially as if a *femme sole.* (p. 589).

3. SAME—*Purchase From Wife of Property so Conveyed who Pays Prior Lien to Protect Own Interests Becomes Equitable Owner or Lien With Same Right for its Enforcement Against Her Which Her Husband or the Other Creditor Would Have Had.*

   A purchaser from the wife of property so conveyed to her, who in order to protect his own interests is required to pay such prior lien assumed by the wife, becomes the equitable owner of the debt and lien with all rights and remedies for its enforcement against her which her husband or the creditor would have had. (p. 590).

4. SAME—*After so Contracting Subsequently Acquired Property Conveyed by a Married Woman to her Son in Consideration of the Assumption by them of a Whole or a Part of her Debts, is Subject to a Trust Enforcible by the Legal or Equitable Owner of Such Debt.*

   Where after so contracting a married woman conveys property subsequently acquired to her sons, in consideration in whole or in part that they will assume and pay her debts, she thereby creates in them a trust in the property which may be enforced in equity by the legal or equitable owner of such debt. (p. 591).

5. SAME—*Statute of Limitations Does not Run Against Such Debt.*

   Against such a debt, of which equity has exclusive jurisdiction, the statute of limitations never·runs. (p. 591).

Appeal from Circuit Court, Mingo County.

Suit by John Marinack and others against Kenna Blackburn and others. Judgment for plaintiffs and defendants appeal.

*Reversed and Remanded.*

*Stafford & Rhodes,* for appellants.

*Goodykoontz, Scherr & Slaven,* and *Okey P. Keadle,* for appellees.

MILLER, PRESIDENT:

Upon alleged principles of equity plaintiffs by their bill sought to impress with and have charged as a lien upon Lots Nos. 1 and 2 in Block 43 of the City of Williamson, the sum

of $645.00, which they were obliged to pay to the Williamson Mining and Manufacturing Company as the balance of purchase money and accrued interest due it from the late G. R. Blackburn upon Lot No. 8 in Block 42 of said city, and for which balance the said grantor in its deed to said Blackburn, dated July 2, 1903, retained a vendor's lien.

The bases of plaintiffs' claim to the relief prayed for are the following: First, that on October 18, 1905, a little more than two years after Blackburn obtained his deed from the Williamson Mining & Manufacturing Company he conveyed said lot with covenants of general warranty directly to his wife, the late Talitha Blackburn, according to the recitals in the deed, in consideration of one thousand dollars in hand paid and thereby acknowledged, "and for the further payment of the balance of the purchase money" on said lot "to the Williamson Mining & Manufacturing Company."

Second, that on February 7, 1906, said Talitha Blackburn, her husband, the said G. R. Blackburn, joining therein, conveyed said Lot No. 8 in Block 42, with covenants of general warranty to the plaintiffs, John Marinack and Mike Marinack, and Rudolph Sohaney, for the cash consideration of twenty-five hundred dollars, and wherein in addition to the covenants of general warranty they covenanted that the said lot was free from incumbrances; but that in truth and in fact it was then incumbered with the said vendor's lien in favor of the Williamson Mining & Manufacturing Company, amounting with interest on April 23, 1917, when plaintiffs were required to and did pay the same, to the sum of $645.00.

Third, that the said sum of money paid by plaintiffs to the said Talitha Blackburn for said Lot No. 8 in Block 42, acknowledged in said deed of February 7, 1906, namely, $2,500.00, was at once invested by her in said lots Nos. 1 and 2 in Block 43, without having paid off and discharged said purchase money lien on said Lot No. 8 in Block 42, the existence of which was in fact unknown to plaintiffs.

Fourth, that by deed of July 9, 1914, the said Talitha Blackburn and G. R. Blackburn, her husband, conveyed said lots Nos. 1 and 2 in Block 43, with covenants of general

warranty, to their two sons, the defendants Kenna Blackburn and Isom Blackburn, according to the recitals therein, for the consideration of love and affection, *"the payment by them of the indebtedness of said Talitha Blackburn,"* and in further consideration of the care and support of the said G. R. Blackburn during his life, and the further consideration of the payment of $378.00 to other children and grandchildren of the said Talitha named in the deed, and in the proportions therein stipulated.

The theory and allegations of plaintiff's bill are that whether bound by her covenants of general warranty in the deed to plaintiffs of February 7, 1906, and her covenant against incumbrances therein, the said Talitha Blackburn, when she took from her husband, the said G. R. Blackburn, his deed for said Lot No. 8 in Block 42, and assumed the balance of the payment of the purchase money due the said Williamson Mining & Manufacturing Company, she by special contract became bound in equity to said grantors to pay them said purchase money, and that when plaintiffs were required to pay the same, they became subrogated in equity to all the rights and means of enforcement of those rights which belonged to the said vendor; and moreover, that they have the right to charge the sum so paid by them to satisfy said purchase money lien upon said lots Nos. 1 and 2 in Block 43, upon two grounds; first, that in equity they have the right to trace the money wrongfully received from them by said Talitha Blackburn into the property in which she invested it; and, second, that in her deed to her sons Kenna and Isom for said lots Nos. 1 and 2 in Block 43, the said Talitha thereby charged said property with the payment of her debts, and created in them a trust in said property for the payment thereof, including the debt which in equity she owed plaintiffs.

Among the defenses relied upon of course are those already suggested; namely, that Mrs. Blackburn can not be rendered liable upon her covenant of general warranty in the deed of herself and her husband to plaintiffs, of February 7, 1906, or upon that against incumbrances. As to the covenant of general warranty, the statute, section 6 of chapter

73 of the Code, as that section stood at the time, rendered that covenant as to Mrs. Blackburn, then a married woman, nugatory, even though it may have related to her separate estate. *Moore* v. *Ligon,* 22 W. Va. 292. What the effect of the amendment of that statute by section 6, chapter 65 Acts 1919, which eliminated the provision disabling a married woman from binding herself by covenants of general warranty, particularly when they pertained to her sole and separate estate, we need not say in this case, for the question is not presented.

And with respect to the covenant in said deed against incumbrances, which was broken immediately on the making and delivery of the deed, the statute of limitations has long since run against any action by plaintiffs thereon. *Smith* v. *White,* 71 W. Va. 639.

The real basis for relief relied on by plaintiffs is the assumption by Mrs. Blackburn in the deed of her husband to her, of October 18, 1905, of the balance of the purchase money due to the Williamson Mining & Manufacturing Company, which they were compelled to pay. Manifestly this proposition does not stand either upon the covenant of general warranty or the covenant against incumbrances in the subsequent deed to plaintiffs. The assumption by a married woman, grantee in a deed from her husband, of a prior mortgage or lien, being a part of the consideration, constitutes a binding contract in equity between grantor and grantee, which may be enforced in equity by the husband or by his assignee or by any one who is required to perform her promise to pay. 2 Jones on Mortgages, (7th ed.) §753.

But it is answered that even if Mrs. Blackburn did so promise and bind herself, she thereby bound only the estate which she took under the deed and not herself personally nor her prior estate or any estate which she thereafter acquired, and particularly the two lots now being proceeded against. In this proposition we think counsel is in error. By the married women's act of 1893, many of her disabilities were removed. Since that act she has had power to contract and bind her separate real and personal estate substantially in all respects as if she were a *femme sole.* So held

in *Williamson* v. *Cline,* 40 W. V·a. 194, one of the cases cited and relied on by defendant's counsel. There certainly can be no doubt about this proposition.

Plaintiffs do not appear to·have undertaken to support by proof the allegation of their bill that Mrs. Blackburn, on receipt of the $2,500.00 of purchase money from them for Lot No. 8 in Block 42, immediately invested it in lots Nos. 1 and 2 in Block 43. One of the plaintiffs swears that Mrs. Blackburn had so told him. But the answer denies the fact. The defendants undertook to prove by one or two witnesses that all of the $2,500.00 was deposited in bank and was checked out by their father and mother and dissipated or lost in a mercantile enterprise, and that the said lots Nos. 1 and 2 and all improvements thereon were paid for by money accumulated by their mother· by keeping boarders etc. No details are given; just a general claim of this kind is made. Why the bank officials with books showing deposit and disbursements were not summoned and the actual facts in relation thereto proven, we can no more than guess. It seems to us that if their contention was true, they would have been more than anxious to establish the fact. Presumptively the facts were all in the immediate possession of the defendants ·or at their command. If, as plaintiffs contend, the money did actually go into the property conveyed by Mrs. Blackburn and her husband to defendants, a very much stronger ground for equitable jurisdiction in their behalf would be presented. ·But we are obliged to dispose of the case as presented and not as possibly it might have been.

We are limited, it seems to us, therefore, to the proposition relied on by counsel for plaintiff, that Mrs. Blackburn by accepting from her husband the deed of October 18, 1905, assumed to pay the balance of purchase money on the property, a binding contract in equity and enforceable in a court of equity. The debt thereby became her debt, if void in law, yet valid in equity. Having failed to discharge the debt, and plaintiffs having been forced to do so to protect their own interests, equity will as a matter of course subrogate them to the rights of the original promisee. So held in *Neely* v. *Jones,* 16 W. Va. 625, 639. And as this and num-

erous other cases say, even when a stranger voluntarily pays the debt or obligation of another, if the debtor refuses to ratify the payment, the debt is not discharged, and the stranger who pays the creditor thereby becomes the equitable owner of the debt with all remedies for the enforcement of the payment thereof against the debtor. *Smith Ins. Agency* v. *Hamilton Fire Ins Co.,* 69 W. Va. 129; *Crumlish* v. *Improvement Co.* 38 W. Va. 390; *Moore* v. *Ligon, supra.*

This debt, though only enforceable in equity, is of the same or even greater dignity as any other debt not contracted in like manner, and unless barred by laches or the statute of limitations, is as much entitled to protection as any other debt provided for in the deed of July 9, 1914. The moral obligation of the debtors is even greater, for evidently they committed a fraud upon plaintiffs by taking the whole of the purchase money for said Lot No. 8, and leaving them to bear the burden of an incumbered title and making away with the whole of the purchase money, if the pretentions of the defendants be true. Defendants would limit their liability under the deed to certain specific debts which they contend were the only debts contemplated. But their contract was to pay the debts of Mrs. Blackburn, not some of them. She must have known of this the largest of her debts, and appreciated her moral and equitable obligation to discharge it; and it becomes immaterial whether the purchase money obtained from plaintiffs was in whole or in part invested in the property conveyed to them. If, as we hold, the balance of purchase money which plaintiffs were called upon to pay for her was her debt in law or in equity, defendants took upon themselves the burden of discharging it when they accepted her deed.

The next inquiry is, is this suit barred by laches or by the statute of limitations? As we have already shown, the debt against Mrs. Blackburn was an equitable, not a legal obligation. Equity has exclusive jurisdiction. The statute of limitations never runs against a right the vindication of which is so cognizable. *Depue* v. *Miller,* 65 W. Va. 120; *Patrick* v. *Stark,* 62 W. Va. 602.

Moreover the cause of action in favor of plaintiffs did not

arise until they were forced to pay and did discharge the balance of the purchase money on their lot, which the proof shows was about May 14, 1917.  This suit was brought July 31, 1917.

The effect of the deed from Mrs. Blackburn to her sons was to create in them a trust for the payment of her debts and the other objects specified, and which they were bound to execute.  The debts so provided for, though perhaps not strictly speaking constituting a lien upon the land, nevertheless constitute a charge upon the property which equity will enforce.  *Matheny* v. *Ferguson*, 55 W. Va. 656, 660-661.  And being in a court of equity, relief may be decreed directly to plaintiffs without the intervention of the personal representative of Mrs. Blackburn.

Our conclusion is to reverse the decree and remand the cause for further proceedings to be had therein in accordance with the principles herein enunciated.

*Reversed and Remanded.*