# CHARLESTON.

WILSON LEE CAMDEN *v.* THE FINK COAL & COKE COMPANY

(No. 6137)

Submitted October 30, 1928.    Decided November 13, 1928.

*R. F. Kidd,* for appellant.
*B. W. Craddock,* for appellee.

HATCHER, JUDGE:

The plaintiff, who is a resident of the state of Maryland, owns several tracts of land in West Virginia. In June, 1903, he granted to John M. Core the coal underlying a tract of 64 acres on Finks creek in Gilmer county. A few weeks later Core conveyed the same coal to the defendant. No transfer of this coal to defendant was made on the land books until 1919. From 1903 to 1918 inclusive, the plaintiff was charged with and paid the taxes on the fee of the 64 acres. He obtained in this suit a lien against the coal for the proportionate part of the taxes paid by him which properly should have been charged to the defendant.

The defendant contends that a tax is not a debt and therefore this is not a case for subrogation, citing Hogg's Eq. Principles, sec. 417. That author relies on *Hinchman* v. *Morris,* 29 W. Va. 673, which fully supports the text. Subrogation of a sheriff to the rights of the state, because of taxes he had advanced for others, was there refused on the theory that taxes were not debts under the Virginia Code of 1860. That decision, however, is limited by specific declaration to the status of taxes under that Code. See pages 683, 685-6-7. Shortly after the separation of this state from Virginia a statute was passed giving the sheriff the same remedies for taxes paid by him, as if the taxes had not been so advanced; and sometime later the Legislature authorized a tax collector to proceed by appropriate action or suit against the person liable for taxes "in the name of the state, in any court of law or equity, or before any justice of the peace having jurisdiction." See sections 33 and 34, Ch. 30, Code, 1923. The decision in *Hinchman* v. *Morris,* points out certain differences between the essential qualities of a tax and a debt. Taxes have been invested by legislative action with several of the characteristics of a debt there listed. A few distinctions yet remain, but the grudging admission of an older decision that a tax was in "the nature of a debt" *(McIrney* v. *Reed,* 23 Iowa 410, 414) has ripened into the present popular conception

that a tax is an obligation the taxpayer owes (see note 42. Am. St. Rep., 656), and that where a statute imposes per-- sonal liability for a tax, the tax becomes, in a broader sense, *a debt.* While adhering to the *legal* technical exclusion of taxes from the meaning of the word debt, the Supreme Court of California stated in *Perry* v. *Washburn,* 20 Cal. 318, 350: "The term debt, it is true, is popularly used in a far more comprehensive sense, as embracing not merely money due by contract, but whatever one is bound to render to another whether from contract or the requirements of law." And in the later case of *Gas Company* v. *Brickwedel,* 62 Cal. 641, 645, it was held that where the law made the payment of taxes a personal obligation, then a tax became a debt in "the larger sense" within the meaning of the statute. "The effect of our statutes and decisions is to make the tax on land a debt of the owner of the land, secured by a statutory lien, the debt and lien being treated as other debts and liens." *Nashville* v. *Cowen,* 78 Tenn. 209, 213. A tax is "a debt in the higher sense of the word." *State* v. *Georgia Company,* 112 N. C. 34, 37. "A tax is nothing more than a debt due by the citizen to the taxing power." *Shermerhorns Ex.* v. *Commonwealth,* 107 Va. 707. In line with the modern trend this Court in *Woodyard* v. *Sayre,* 90 W. Va. 295, 299, after comparing *Hinchman* v. *Morris* and allied cases with our statutes, concluded: "It is quite manifest that these provi- sions of the statute materially altered the rights of the sheriff as collector of taxes, and *make taxes debts* for which the officer may now sue and obtain judgment or decree, and that he may enforce the lien thereof given by statute at least on the personal estate of the tax payer, and that if the law had. been then as it is now, the decisions in the cases cited, as. well as that of *Myers* v. *Miller,* 45 W. Va. 595, would have been different."

*Hinchman* v. *Morris* was written in 1887. Since then the law of subrogation has been greatly expanded. 25 R. C. L. 1322-3. It is now conceded that there is nothing in the na-- ture of a lien for taxes to prevent the application of the equit- able doctrine of subrogation where that doctrine would other- wise apply. *Title Co.* v. *Haven,* 196 N. Y. 487, 494-5. And.

it is generally held that one possessed of a real or apparent interest in property who pays taxes thereon to protect it—taxes for the payment of which another is justly bound—is entitled to subrogation to the right of the taxing power. 25 R. C. L. 1366; *In re Hominy Co.*, 294 Fed. 921, 925. This holding is thoroughly in accord with the fundamental doctrine of subrogation which has been stated to be "broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter." *McNeil* v. *Miller*, 29 W. Va. 480, 483; *Bassett* v. *Straight*, 78 W. Va. 262, 266; *Fidelity & Guar. Co.* v. *Trust Co.*, 95 W. Va. 458, 462.

We are aware that some courts have refused subrogation where payment of taxes is made under a mistake, as in this case. See *Iowa Homestead Co.* v. *Ry. Co.*, 17 Wall 153, and. *Carr* v. *Stewart*, 58 Ind. 581, 583. The decisions in that line of cases are due to the doctrine that such a payment is voluntary and for that reason cannot be recovered. That doctrine does not prevail in this state. *Neely* v. *Jones*, 16 W.. Va. 625; *Crumlish Admr.* v. *Imp. Co.*, 38 W. Va. 390; *Ins. Agency* v. *Ins. Co.*, 69 W. Va. 129; *Marinack* v. *Blackburn*, 93 W. Va. 585, 590-1. Besides the plaintiff cannot be considered a mere volunteer. He was the owner of the surface of the 64 acres. He was entitled to pay the taxes on the fee charged in order to protect his lesser interest. Cooley Taxation, 4th ed., sec. 1260.

Defendant says relief should be denied the plaintiff, because of his negligence in not having the coal properly charged. Culpable negligence may bar equitable relief against one free from fault. But the negligence of the plaintiff in this respect must be shared by the defendant, as it was the latters duty to have the coal charged to it. Here is a mutual mistake arising from mutual negligence. Relief is not ordinarily denied on the ground of negligence where both parties are equally at fault, and the defendant has been in no way prejudiced, as is the case here. *Taylor* v. *Godfrey*,. 62 W. Va. 677, 683-5; 21 C. J., page 88, sec. 64. "Most mistakes arise out of some degree of negligence. It is impossi-

ble, therefore, to fix any inflexible rule to determine the amount of negligence necessary to deprive a party of relief in a court of equity on account of mistake. This, it has been said, is peculiarly applicable as between the immediate parties to the transaction. If a mistake has been mutual, the fact that the party who is to be injured thereby, if the mistake be not corrected, was negligent in making the mistake, ought not to prevent a court of equity from correcting it, unless the mistake was wilful or fraudulent on his part and done with a view to injuring or damaging the other party." *Lbr. Co.* v. *Rancour,* 24 Idaho 603, 611-12.

It is also contended that the plaintiff is guilty of laches. The only element of laches chargeable to plaintiff is delay. Delay alone does not constitute laches. It must be delay which places another at a disadvantage. *Carter* v. *Price,* 85 W. Va. 744; *McMullin* v. *Matheny,* 104 W. Va. 317, 323. "It must be made to appear affirmatively that unusual circumstances exist which on account of such delay render the proceeding inequitable; else relief cannot be denied on this ground." *Brundy* v. *Canby,* 50 Mont. 454, 474. No such unusual circumstances appear here.

The defendant places some reliance upon a letter it received from the clerk of the county court of Lewis county which states that in the year 1903 it was charged with 2645 acres of coal on the waters of Fink and Freeman's creeks in his county, and that from 1904 to 1918, inclusive, that acreage was increased to 3301 acres. The clerk does not explain, however, what tracts caused the increase and there is no evidence on the subject. We can hardly infer that the increased charge in Lewis county comprehended a tract in Gilmer county.

The 64 acres was returned delinquent and sold several times between 1903 and 1919. The defendant complains that the sales would not have occurred had the plaintiff "been vigilant or used reasonable diligence", and says that the costs and extra charges expended in redeeming the tract should not now be ratably charged it. The plaintiff was under no obligation to defendant to be vigilant in its behalf. His eleventh hour diligence was a "poor thing" perhaps;

but such as it was it served the defendant and prevented the loss of the coal. Accordingly, the defendant must now bear its share of his outlay.

Defendant finally asserts that plaintiff had a complete and adequate remedy at law. Such remedy is not suggested, however, and none occurs to us. At law a material part of his claims would have been subject to the statute of limitations. In equity that statute will not be applied against a purely equitable demand, such as his. *Heiskell* v. *Powell,* 23 W. Va. 717. *Crammer* v. *McSwords,* 24 W. Va. 594; *Patrick* v. *Stark,* 62 W. Va. 602; *Depue* v. *Miller,* 65 W. Va. 120; *Marinack* v. *Blackburn, supra.*

We accordingly hold that the plaintiff is entitled to subrogation in this case and affirm the judge of the lower court.

*Affirmed.*