## HALL AND PATTON *v.* TAYLOR *et al.*

Decided November 12, 1881.

*(PATTON, JUDGE, absent.)*

1. A sheriff, who has an execution in his hands, gives the defendant indulgence on it and neither makes the money on it nor returns the execution promptly; and apprehending he has rendered himself liable to the plaintiff in the execution by his negligence he pays off the execution to the plaintiff without the request of the defendant and with no understanding or agreement with the plaintiff, that the judgment was to be thereafter for the use or benefit of the sheriff. HELD:

The defendant on motion can have the execution thereafter issued on the judgment quashed, because it has been paid. By such motion to quash the defendant ratifies the payment made by the sheriff without the authority of the defendant; and the sheriff can recover of the defendant in an action of *assumpsit* for money paid for his use at his request the amount of the first execution paid by him.

*Cause submitted before JUDGE P. took his seat.

2. In such a case the defendant cannot in a court of equity enjoin the collec-tion of the second execution issued for the use of the sheriff, as he has an adequate and summary remedy at law: the motion to quash the execution because the judgment has been paid.

3. If a sheriff with his own money pays off an execution, which has been or is in his hands, without the request of the defendant, but at the time he pays such execution or judgment, there is an understanding or agreement between him and the plaintiff, that he shall have the benefit of the judg-ment and issue another execution in the name of the plaintiff for the use of the defendant, this amounts to a purchase by the sheriff of the judg-ment, and he has a right as against the defendant to issue another execu-tion on the judgment for the use of himself.

4. *Quære:* Would not public policy forbid the courts to permit a sheriff in such case to be entitled to the benefit of such second execution as against third parties, as for instance, a subsequent judgment-creditor?  See *Neeley et al.* v. *Jones et al.*, 16 W. Va. 626.

5. If a court in a decree expresses the opinion, that before a final decree can be made certain, settlements should be made before a commissioner of certain accounts between the plaintiff and defendant, and therefore orders such accounts to be settled; and both parties appear before the commis-sioner, furnish their accounts and vouchers, take depositions, and are fully heard on every point in the case, and at their request respectively the commissioner makes special statements of the accounts presenting their views respectively, and they each file numerous exceptions as to the merits of various charges and credits in their accounts as reported by the commissioner, such conduct of the parties does not amount to a consent, that such accounts should be settled in the cause, and it is not such an ac-quiescence in what had been done, as would justify the court in render-ing a decree based on such settlement, if it would not be authorized to do so without any acquiescence or consent by the parties.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ritchie, rendered on the 26th day of October, 1877, in a cause in said court then pending, wherein Cyrus Hall and William Patton were plaintiffs, and James Taylor and others were defendants, allowed upon the petition of said plaintiffs. ,

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case:

On December 6, 1867, Cyrus Hall and William M. Patton presented to George Loomis, judge of the then sixth judicial circuit, their bill in chancery praying an injunction. The

bill was addressed to the judge of the circuit court of Ritchie county and stated, that at the June term of the county court of Ritchie county in the year 1859 one John S. Porter, who sued for the benefit of Isaac Lambert, obtained a judgment against them for $250.00 with interest thereon from September 1, 1854, and costs of said suit; that on June 12, 1858, an execution issued on this judgment and went into the hands of James Taylor, then sheriff of said county, who made no return on this execution, but on October 15, 1866, returned it to the clerk's office of Ritchie county unendorsed; that at that time Cyrus Hall, one of the complainants, was the Commonwealth's attorney for said courts, and between the time said judgment was rendered and 1861 several allowances were made to him as said Commonwealth's attorney, amounting to $1,238.88 in all; that since the last term of the circuit court of Ritchie county, held in 1867, an execution has been issued on said judgment, which was directed to the sheriff of Wood county. The bill charged, that Isaac Lambert had long since been paid by said Taylor the amount of this judgment, and that this last execution had been sued out by said Taylor without the consent or knowledge of Lambert. The bill further charges, that ever since 1868 the said Taylor had always had in his hands funds belonging to the complainant, Hall, more than sufficient to pay off and discharge this judgment, and that he then owed him not less than $800.00; and that the whole amount of the execution, interest and costs had long since been paid by the complainants to said Taylor, and that said Lambert had been paid by said Taylor, which payment to Lambert was made in 1866 with a bond executed by him and his brother to Lambert for the full amount of this first execution, which bond was accepted and received from said Taylor in full satisfaction of the judgment and execution. The prayer of the bill was: "Your orators being without remedy save in a court of equity, where matters of this kind are cognizable and determinable, they pray, that said Isaac Lambert, John S. Porter, James Taylor and William H. Mattingly, sheriff of Wood county, and in whose hands said execution is, be made parties defendant to this bill, and that they and each of them answer the same under their oaths; and the further prayer of your orators is, that your Honor

will enjoin and inhibit the said Lambert, Porter, Taylor and Mattingly or either of them from collecting the judgment and execution aforesaid, and grant unto your orators such other and further relief, as the nature of the case requires."

This bill was sworn to and the injunction prayed for granted.

Isaac Lambert filed his answer sworn to, in which all the allegations in the bill are stated to be true except the allowances and accounts between the plaintiffs Hall and Taylor, as to which, he says, he knows nothing.

On December 3, 1869, the court entered the following decree: "This cause came on this day to be heard on the bill, answer of the defendant, Lambert, replication thereto and exhibit filed, and was argued by counsel. And the other defendants failing to appear and file their answer, although duly served with process, the bill is taken for confessed as to them. On consideration whereof it is adjudged, ordered and decreed, that the injunction awarded on the 6th day of December, 1867, to restrain all proceedings on the judgment in the bill mentioned and the execution thereon be and the same is hereby made perpetual, and the said defendants are hereby perpetually enjoined from all proceedings to collect the said judgment or any part thereof. And it is further adjudged, ordered and decreed, that the defendants do pay to the complainants their costs by them about their suit in this behalf expended."

On the next day this order was set aside, the process not having been executed on Porter, and Lambert having died, and the cause not having been revived against his administrator.

On April 7, 1870, James Taylor filed his answer, which was sworn to. This answer has the usual beginning asking that he may have the benefit of all errors and imperfections in the bill, as if it had been formally demurred to. He admits, that the first execution came into his hands as deputy sheriff of Ritchie county ; thinks it was lost, and that it was not returned to the clerk's office unendorsed. He admits the collection by him of all the allowances named in the bill in favor of complainant, Hall, except one of $140.00. He admits, that Lambert was paid by him the whole amount of the first execution and of the judgment, on which it was based. This was done on May 25, 1866, and was done, because he feared,

that he was liable as sheriff for failing to make the money on this execution and for having failed to return it to the clerk's office; but this settlement of this judgment and execution was made by him with the express understanding with Lambert, that he, Taylor, was to have the benefit of said judgment and the right to use Lambert's name in any necessary remedy to obtain satisfaction of the judgment. He says, that it is true, that between 1858 and 1861 he had moneys in his hands of complainant, Hall, out of which this judgment might have been paid, if Hall had been willing or had directed that it should be paid; but a long time passed before this suit was instituted; and now Hall is and has been largely in his debt; that he has tried to get a settlement with the complainants, but has been unsuccessful; that Hall in one transaction owes him $4,800.00. He further says, he is willing, that any sum, which can be shown to be due from him to either of the complainants upon a settlement of their dealings, shall be applied to this judgment, if they will consent to make such settlement, which they have not done, though often asked, because both of them are largely in his debt. He says further, as the bill shows, that nearly all of the money of Hall, which came into his hands before 1861, if not all of it, was received by him long after the return-day of the first execution, and for this reason could not be by him applied legally to the satisfaction of this execution.

Three witnesses proved, that when the defendant, Taylor, settled with Lambert the amount of his judgment against Hall and Patton, there was a distinct understanding between them, that the judgment was to be for the benefit of Taylor, and that execution should issue on it in Lambert's name and be sent to Wood county to be collected for the use of Taylor. These witnesses were all present at this settlement, and one of them further proves, that in accordance with this distinct understanding, when this execution was afterwards issued and sent to the sheriff of Wood county, Lambert gave an order to Taylor directing the sheriff of Wood county to pay the amount of the execution to Taylor. This order was produced and proven.

On the 23d of October, 1873, the court made the following order: "This cause came on this day again to be heard upon the papers formerly read, and the orders formerly made there-

in, and was argued by counsel, and the court being of the opinion, that before a final decree can properly be made therein, a settlement of the accounts and business-transactions of the plaintiff and defendant, James Taylor, should be had.  It is therefore adjudged, ordered and decreed, that this cause be and the same is hereby referred to Thomas E. Davis, one of the master-commissioners of this court to ascertain, state and settle the accounts and dealings between the said plaintiffs and the said defendant Taylor, and report the said settlement to a future term of this court.   And said commissioner is required to give ten days' notice to either party of the execution of this decree."

Numerous depositions were taken by the parties; and on March 25, 1874, the commissioner made his report, not necessary to be here stated.   This report was excepted to for numerous reasons; and on the 25th of November, 1874, the court entered this decree: " This cause came on this day to be heard upon the papers formerly read and the orders formerly made therein.   The report of commissioner, Thomas E. Davis, and exceptions thereto and the affidavit of said Hall, and was argued by counsel; upon consideration whereof it is adjudged, ordered and decreed, that the same report be and is hereby set aside, and this cause is recommitted to said commissioner, Thomas E. Davis, with directions to execute the former order of reference in this cause, and state any account the parties may desire between them; and either party may produce such additional testimony before said commissioner as they may deem proper, and retake the deposition of any witness, and said commissioner shall report the proceedings to a future term of this court."

Many more depositions were taken by the parties; and on the 15th day of April, 1876, the commissioner made his report under this order, and with it returned an account between Cyrus Hall and James Taylor, commencing in 1851 and extending to 1863, an account of Taylor with Patton individually, and an account of Taylor with Patton and Hall jointly.   The result of these long accounts is thus stated by the commissioner:

"Account stated generally between James Taylor, Cyrus Hall and William M. Patton, including individual accounts

stated, as well as joint accounts stated, will appear as follows, viz:

|  | DEBITS. | | CREDITS. | |
|---|---|---|---|---|
|  | PRIN. | INT. | PRIN. | INT. |
| C. Hall, total ind. acc. with Taylor, .....................$1,737.17 | | $1,506 74 | $1,803.91 | $1,728.57 |
| W. M. Patton, do  do        do ................. ...  72.42 | | 71.45 | 1,013.30 | 1,011.66 |
| Wm. M. Patton and C. Hall by joint ac. Taylor,  1,081.13 | | 1,653.97 | | |
| Amount due Taylor......................... .................... | | | 73.51 | 491.93 |
|  | "$2,890.72 | $3,232.16 | $2,890. 72 | $3,232.16 |

"If it be law, that Taylor is entitled to credit for the accounts stated at the end of each individual account stated, the account will stand as below:

|  | DEBITS. | | CREDITS. | |
|---|---|---|---|---|
|  | PRIN. | INT. | PRIN. | INT. |
| C. Hall, total ind. acc. with Taylor.....................$1,912.17 | | $1,667 74 | $1,803 91 | $1,728.57 |
| Wm. M. Patton,  do        do ....................... 102 48 | | 108 58 | 1,013.30 | 1,011.66 |
| Wm. M. Patton and C. Hall, jointly.................... 1,081.13 | | 1,653 97 | | |
| Amount due James Taylor,      .................... | | | 287.57 | 690.06 |
|  | "$3,095.78 | $3,430 29 | $2,817.21 | $2,790 23" |

He also filed special reports at request of parties.

To this report both parties filed numerous exceptions, not important to be stated, except the first exception filed by the complainants, which was: "The commissioner erred in his allowance of compound interest upon the execution against the complainant for $250.00, being the first item mentioned in the general account between William M. Patton, Cyrus Hall and James Taylor. It will be seen, he has computed interest up to December 11, 1866, the date when the judgment was purchased by Taylor, making (after deducting credits of $24.67) $409.50 and adding costs $417.03, and upon this latter amount of principal, interest and costs he has computed interest to April 4, 1876. This cannot be done, as it was not a payment of the judgment at Hall's or Patton's request but merely in fact and effect a purchase of the judgment."

On October 26, 1877 the court rendered the following decree:

"Thomas E. Davis, one of the commissioners of this court, having made up and filed his report in this cause, on the 15th day of April, 1876, to which the plaintiffs and the defendant, James Taylor, filed their exceptions, respectively. This cause came on this day to be further heard upon the papers formerly read and orders made in this cause, on the said report and exceptions filed thereto, as aforesaid; on the deposi-

tions and proofs filed with said report, and in the cause; upon the material accounts and the exhibits filed by the plaintiffs and the defendant, James Taylor; and was argued by counsel. On consideration whereof, it appearing to the court that the parties plaintiff and the defendant, James Taylor, have mutually entered into a general settlement of their accounts, as appears by the papers in their cause, and have submitted their said accounts to the said commissioner, who has fully and minutely investigated and reported upon the same in pursuance of the directions of this court, the court is of the opinion, that the exceptions of the said plaintiffs to the said report of commissioner Davis, numbered one, three, four, five, six, seven and eight, are not well taken, and are therefore overruled, and said exception numbered two, referring to the matter of the special report, hereinafter mentioned, is disregarded as immaterial, as it hereinafter appears from the disposition of the court upon said special report, and that the exceptions of the defendant, Taylor, to said report, numbers one, two, four, five and seven, are not well taken, and are therefore overruled, and that exceptions numbered three and six of said defendant, Taylor, to said report are sustained; it is therefore adjudged, ordered and decreed, that the said report of Commissioner Davis be, and the same is hereby confirmed in all other respects, and as herein modified by the court; and it appearing by said report, that on the 4th day of April, 1876, the said plaintiffs, Cyrus Hall and William M. Patton, upon said settlement were indebted unto the said James Taylor in the sum of $278.54 principal, and $690.06 interest, making an aggregate at that date of principal and interest of the sum of $968.63; and it appearing to the court, that said commissioner in his report erred in allowing the said plaintiffs upon said settlement the sum of $484.59 principal, and $485.60 interest thereon up to the 4th day of April, 1876, being the amount of a receipt or note, bearing date the 3d day of August, 1859, in the report referred to, the same having been previously allowed and settled between Hall and Taylor in the settlement made between them on the 23d day of March, 1860, as shown by the weight of evidence taken in this cause. It is therefore adjudged, ordered and decreed, that the said report be, and the same is hereby corrected and amended in this particular, that

the said James Taylor be allowed as a credit the said sum of $484.59 principal, and $485.60, the interest thereon to the 4th day of April, 1876, aggregating $970.19, which is improperly charged against him in said account, and the court is of the opinion, that the special report of said commissioner made and filed with said general report, at the request of said Cyrus Hall with reference to certain claims and receipts therein mentioned, is immaterial and irrelevant in this cause and it is disregarded. It is therefore adjudged, ordered and decreed, that the said Cyrus Hall and William M. Patton do pay unto the said James Taylor the sum of $968.63, with interest on $278.50, part thereof, from the 4th day of April, 1876, until paid, and that the said Cyrus Hall and William M. Patton do also pay to the said James Taylor the further sum of $970.19, with interest on $484.59, part thereof, from the 4th day of April, 1876, until paid. And it is further adjudged, ordered and decreed, that the injunction heretofore awarded in this cause be, and the same is dissolved, and that the payment of the judgment enjoined by the plaintiffs in this suit shall be when paid a credit on the amounts herein and hereby decreed against the plaintiffs in favor of the said James Taylor; and that the defendant, James Taylor, recover against the said plaintiffs his costs by him about his suit in this behalf expended. And execution may issue for the defendant, James Taylor, for said amounts and costs. On motion of Daniel Boughner, who filed the receipts and claims mentioned in the special report of Commissioner Davis, made at the request of said Hall, and which is disregarded in this case as herein directed, he has leave to withdraw the same upon leaving in the papers of the cause attested copies thereof. And on motion of the said plaintiffs, execution on this decree is not to go out of the clerk's office until after the end of the next term of this court."

To this decree an appeal and *supersedeas* to this Court was awarded by one of the judges thereof.

*Walter S. Sands,* for appellants cited the following authorities: 3 Johns. 434; 10 Johns. 368; 14 Johns. 87; 8 Johns. 43; 3 Paige 117; 1 N. J. 586; 1 H. & M. 453; 27 Gratt. 740; 1 Call 18; 3 Leigh 85.

*John A. Hutchinson,* for appellee cited the following authorities: 2 Madd. Chy. 577; Amble 229; 1 Cow. 709; 9 Johns. 450; 3 Munf. 397; Broom's Leg. Max. 135; 14 L. J. Chy. 246; 7 Johns. 611; 2 Com. 281; Pow. App. Proc· 191, 192; 24 Beav. 559; 94 E. C. L. 59; 18 C. B. 806; 1 Paige 41; 8 W. Va. 218; 10 W. Va. 650; 1 Paige 142; 3 Johns. Chy. 77; 1 Wash. 224; 2 Gratt. 384; 13 Pet. 359; 2 Rob. (old) Pr. 383; 6 W. Va. 422.

GREEN, JUDGE, announced the opinion of the Court:

The first error committed in this cause was in the awarding of the injunction by the judge in vacation on December 6, 1867. The bill sought to enjoin the collection by the sheriff or the parties of an execution against the plaintiffs on a certain judgment, on which a former execution had issued; and in it the plaintiffs allege, that "the whole amount of the judgment and former execution, interest and costs have been long since paid by your orators to said Taylor" (the sheriff) "and that said Lambert" (the plaintiff in the former execution) "has been paid by said Taylor." If this were the fact, it is obvious, that a court of equity had no jurisdiction to award an injunction, as the complainants show on the face of their bill, that they had a simple summary and adequate remedy at law. If the execution was thus paid, they had but to move to quash it, and the court of law could have been in no manner embarrassed in affording at once the most adequate remedy by at once quashing the execution.

It may however be said, that though this allegation was made in the bill, yet taking it altogether the court might regard, that the case stated in the bill really was, that the sheriff knowing himself to be indebted to one of the defendants, Hall, in a large amount exceeding the amount of the execution of his own accord and without the request of the defendant, Hall, paid off this execution to the plaintiff in the execution and judgment, and then the execution sought to be enjoined "had been sued out at the special instance and request of Taylor" (the sheriff) "without the consent or knowledge of Lambert" (the plaintiff in the execution).

On this state of facts it is equally clear, that a court of law would on motion of the defendant, Hall, have at once quashed

the execution ; for by making the motion to quash the execution, because the judgment had been paid, he would have approved and confirmed the unauthorized payment of it by the sheriff, and this would have made the case precisely the same, as if it had been paid by the sheriff at the request of Hall. This was so expressly determined by this Court in *Neeley et al* v. *Jones et al.,* 16 W. Va. 625. It was there decided, syllabus 3 : "The debtor may by pleading or relying on the payment of a stranger ratify it ; and such ratification, being the equivalent of a previous request, the debtor will be thereby discharged." And by syllabus 6 it appears, as it does still more fully in the opinion of the Court, that a payment of an execution or judgment by a sheriff, who has had an execution in his hand, without any request of the defendant in the execution will have precisely the same effect, as if paid by a stranger without request, where the rights of third persons do not intervene.

No motion in this case was made to dissolve the injunction, which had been improvidently awarded ; and no demurrer was filed to the bill ; but there being no equity in the bill, the court of its own accord on the final hearing of the cause ought to have dissolved the injunction and dismissed the bill at the cost of the complainants. But it may be said that an opportunity should have been afforded the complainants to amend their bill, before it was finally dismissed because of defects on the face of the bill, which would have rendered it liable to be dismissed on general demurrer. This would certainly have been the case, had the proceedings and evidence in the cause shown, that the plaintiffs really had a good case for the interposition of a court of equity, had they but stated it properly in their bill ; but so far from this appearing in the cause, the evidence established beyond controversy, that when Taylor, the sheriff, paid off to the plintiff, Lambert, his judgment, there was an express understanding and agreement, that he should have the benefit of this judgment. The defendants in their first exception to the commissioner's report copied in the statement of this cause admit, that this was proven in the cause. It was expressly decided by this Court in *Neely et al.* v. *Jones et al.,* 16 W. Va. 625, that if a sheriff or stranger pays a debt or judgment to a creditor, and when he pays it,

there is an agreement between the creditor and him, that he will assign the debt or give him the benefit of the judgment, though no actual assignment is made to the sheriff or stranger, he will be regarded as the equitable assignee of the debt, and the transaction will be considered the equivalent to the purchase of the judgment or debt, with perhaps an exception in some cases, where the sheriff is the purchaser, and the rights of third parties intervene. See 16 W. Va., p. 625, syllabus 5 and 6, and opinion, pp. 641 and 642.

No rights of third persons in this cause intervene, and on the evidence in this cause there can on this authority be no question, that Taylor, when he paid off this judgment to Lambert, became the equitable owner of the judgment and had a right to enforce it by execution or otherwise. So that the only difference between the case stated in the bill and the one proven is, that the case stated in the bill showed, that the enforcement of this execution could only be stopped in a court of law by motions to quash, and could not be enjoined in equity; while the case proven showed, that the enforcement of the execution could not be stopped in law on a motion to quash, because the judgment was paid, nor be enjoined in equity. The court therefore ought to have dissolved the injunction and dismissed the bill without giving the plaintiffs leave to amend, as the evidence showed, that by no amendment of the bill could they make a case, in which a court of equity would grant relief.

The case of *Crawford* v. *Thurmond et al.,* 3 Leigh 85, is referred to as showing, that a court of equity may grant relief in some cases by injunction, though a court of law might on motion quash the execution. This is true, for instance, in the case in 3 Leigh, where the motion at law would not furnish as safe and convenient a tribunal for the trial of the particular disputed questions involved in the case, as a court of equity would on regular pleadings and proofs. See Judge Carr's opinion in said case, 3 Leigh 88. In such a case the fact, that the real plaintiff in the execution is but an equitable owner of it, may be entitled to some consideration in the determination of the question, whether a court of equity can entertain jurisdiction of the case; but it seems to me obvious, that if this be the only ground, on which the interposition of

a court of equity is asked, it will be insufficient; for it is every day practice, that judgments are rendered in the name of one person for the use of another, and the courts of common law take notice of the person, for whose use the judgment is, in enforcing the same.

It seems obvious, from what has been said, that the circuit court erred in having the voluminous and complicated accounts between the sheriff, Taylor, the real owner by purchase of the execution, the collection of which is sought to be enjoined in this cause, and the defendants in the execution, Hall and Patton, severally, as well as the accounts between these defendants jointly and Taylor, settled and determined, and in rendering a decree in favor of Taylor based on these settlements. The object of the suit was in no degree to settle any such accounts. There was not in the bill any allegation, that any such accounts existed. On the contrary all that is said in the bill is, that the defendant, Taylor, had received certain orders on the funds of the county made in favor of one of the defendants, Hall. There is no allegation about any mutual and unsettled accounts between them ; nor is there one word said about any mutual accounts between the plaintiff, Patton, and the defendant, Taylor, or between the plaintiffs jointly and the defendant, Taylor. This allegation, that Taylor as sheriff had received certain orders of the county court in favor of the plaintiff Hall, gave the court no jurisdiction to offset them against the execution against the two plaintiffs owned by Taylor; for there was no allegation of Taylor's insolvency, or that there was any difficulty in collecting at law any amount in Taylor's hands as sheriff collected on these orders. Indeed it is obvious, that no such allegations could have been made ; for the sheriff and his sureties were bound for all moneys received on such county-orders, and it could have been without difficulty enforced out of them by a simple motion.

It is insisted however, that the parties went into a full and mutual settlement of all their accounts, both their several and joint accounts, furnished their vouchers and accounts, took depositions, and were heard on every branch of them, and that the orders of reference and the confirmation of the last report established beyond possibility of dispute, that the settlement of these accounts was the subject of acquiescence and consent.

I am by no means prepared to admit, that if the record had shown the consent of all the parties to the settlement of these accounts, such consent could have rendered it proper in such a case as this for the court to order such settlement and to render a decree on the result of such settlement, as the case, we have seen, was one in which a court of equity had no jurisdiction, and the settlement of these accounts was entirely foreign to the objects of the suit, as shown by the pleadings. But it is unnecessary to consider, what effect such consent would have had ; for it is obvious, that no such consent was ever given by the parties. There is no pretence, that the complainants gave such consent in their bill. It is true, we may infer from the answer of the defendant, Taylor, that he was willing to enter into such settlements, but we would also infer from it, that the complainants were not willing to do so ; and there is certainly nothing in the orders of the court referring the cause to the commissioner to make these settlements, from which we could infer, that the complainants consented to their being made. The first order made October 23, 1873, was:

" The court being of opinion, that before a final decree can be properly made in this cause a settlement of the accounts and business-transactions of the plaintiffs and defendant, James Taylor, should be had, it is therefore adjudged, ordered and decreed, that this cause be and the same is hereby referred to Thomas E. Davis one of the master-commissioners of this court to ascertain, state and settle the accounts and dealings between the said plaintiffs and the said defendant, Taylor, and report the said settlement to a future term of this court."

On this order a report was made, which on November, 24, 1874, was set aside by the court; " and this cause was recommitted to said commissioner, Thomas E. Davis, with directions to execute the former order of reference in this cause and state any account the parties may desire between them." Now these orders show clearly on their face, that they were not consented to by the parties, but were expressly based on the opinion of the court, " that before a final decree could properly be made in this cause, a settlement of these accounts should be had." An opinion of the court which, we have

seen, was most obviously erroneous. It is true, that under these orders the plaintiffs took steps to prove their side of these accounts, and had special statements made by the commissioner, and took numerous depositions. This of course they were compelled to do; for the court by its opinion had indicated, that if they failed to do this, a decree would be rendered against them for whatever amount the defendant, Taylor, could show he was entitled to on his statement of the account and the evidence offered by him. Surely no inference could be drawn from this conduct of the plaintiffs before the commissioner, that they acquiesced in the propriety of the settlement of these accounts. It is obvious, that the circuit court did not regard these settlements as made by the consent of parties, for in its final decree made October 26, 1877, it says: "It appearing to the court, that the parties plaintiff and the defendant, James Taylor, have mutually entered into a general settlement of their accounts, as appears by the papers in this cause, and have submitted their said accounts to the said commissioner, who has fully and minutely investigated and reported upon the same in pursuance of the *directions* of this court, the court is of opinion," &c. This shows, that the court well understood, that these settlements were made by its commissioner pursuant to the directions of the court and not in pursuance of any consent of the parties. It regarded these settlements as full and complete, and that all parties had entered into them and been fully heard, and doubtless it was correct in this conclusion; but though this were true, yet the fact, that the parties obeyed fully the order of the court and entered fully into these settlements so ordered by the court and produced all their vouchers and took many depositions, does not in any degree tend to show, that they acquiesced in the propriety of the court's requiring such settlements to be made and in no manner justified the court in entering up a decree based on these settlements, the making of which it ought never to have ordered.

The whole of the decree therefore of October 26, 1877, must be reversed, set aside and annulled, excepting only that portion of it, whereby it was further "adjudged, ordered and decreed, that the injunction heretofore awarded in this cause be, and the same is hereby, dissolved," and that portion of

said decree, whereby it was decreed, "that the defendant, James Taylor, recover against the plaintiffs his costs by him about his suit in this behalf expended." It may be onerous on the plaintiffs to have to pay the large amount of costs incurred in taking depositions and in settling these accounts before the commissioner, but inasmuch as they arose from no fault of the defendant, Taylor, and can be ultimately traced to their institution of this suit, when they had no grounds for so doing, they must pay these costs. The amount, to which these costs have been swollen by the improper taking of these accounts, may be judged by the fact, that the record consists of nearly three hundred manuscript pages, when it ought not to have exceeded fifteen pages. The appellants must however recover of the appellee, James Taylor, their costs expended in this Court, and the bill should be dismissed.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE ANNULLED IN PART.

BILL DISMISSED.