## JAMES SWAN *vs.* JOHN PATTERSON, JOHN GLENN and others.

A mortgage was assigned by the mortgagee, and also the equity of redemption by the mortgagor. The assignee of the latter created liens on the property by way of mortgage, and then gave his notes, with an endorser as surety, to the assignee of the original mortgage, for interest due thereon. These notes were paid by the endorser at maturity, but no assignment of the mortgage was ever made to him. The property was afterwards sold, and this endorser asked to be subrogated to the rights of the original mortgagee, to *the extent* of the notes so paid by him, and thereby to have a preference over the subsequent mortgagee, to the surplus proceeds of sale, after payment of the original mortgage, HELD :

1st. That the endorser of these notes not being a party to the original transaction, and there being nothing in the original mortgage which provided for making him a surety so as to be subrogated to the rights of the original mortgagee, he was but a volunteer, and as such not entitled to the priority claimed.

2nd. If when he endorsed the notes he supposed he would have the benefit of the security held by the creditor, he should have entitled himself to such indemnity by an agreement to that effect, or by an assignment *pro tanto* when the notes were paid.

An equitable assignment in favor of a surety, cannot be effected unless he has paid the *entire debt* of the creditor : the principles of substitution require payment *in full* of the debt on which the equitable assignment is claimed.

APPEAL from the Court of Chancery.

In this case a bill was filed for the sale of certain real estate mortgaged by Rebecca Dorsey to the Neptune Insurance Company, on the 15th of April 1843, to secure an indebtedness of

$8000. After the decree for the sale was passed, this company assigned their interest in the mortgage and decree to the Baltimore Life Insurance Company, and on the 15th of February 1844, Rebecca Dorsey, the mortgagor, conveyed her equity of redemption in the mortgaged premises, subject to the mortgage debt, to Edward H. Dorsey, who on the 9th of March, of the same year, mortgaged his interest in the property to John Patterson, to secure a debt of $3574.28. This mortgage, upon its face, was made subject to the preceding mortgage, given by Rebecca Dorsey to the Neptune Insurance Company.

On the 9th of May 1844, Edward H. Dorsey passed to the Baltimore Life Insurance Company, his three promissory notes, endorsed by James Swan, for $443.55, payable respectively at ninety days, six months, and one year, and being for the amount of interest due on the mortgage, which had been assigned to this company by the Neptune Insurance Company, to the 9th of May 1845. These notes were paid at maturity, by Swan to the Baltimore Life Insurance Company, and the property having been sold, and the proceeds being more than sufficient to pay the mortgage debt, Swan insisted that to the extent of the notes so paid by him, he was entitled to be subrogated to the rights of the Baltimore Life Insurance Company, and his claim be preferred to that of Patterson the subsequent mortgagee. Upon this question the chancellor (JOHNSON,) delivered the following opinion:

"No assignment, in fact, was made by the Baltimore Life Insurance Company to Mr. Swan, upon the payment of the money by him, or since; and if he is entitled to occupy the position of an assignee *pro tanto*, it must be by operation of law merely, or upon principles of equity established to effectuate the purposes of justice. But if upon paying this money, Mr. Swan became, upon principles of equity, subrogated to the rights of the Insurance Company, for the amount so paid, he must for all purposes and to every effect, have been placed upon a footing of equality with the company; and in case the mortgaged premises had not sold for enough to pay the entire

mortgage debt, the loss would have fallen in proportion upon the company and Mr. Swan. The argument is, that upon paying this money, Swan, upon general principles of equity, and independent of the statutory provision upon the subject, became entitled to an assignment of the security *pro tanto*, and to be substituted to the rights of the company, to whom the payment was made. Not that he thereby acquired a right to come in next after the company; but to stand in the shoes of the company, to the same extent and with like effect as if they had executed to him a formal assignment of so much of the mortgage, which would of course have placed them on a footing of perfect equality, and in case of deficiency in the security, the loss would have been shared by them in proportion to the amount due each.

"But can it be contended, that such is the effect in equity, of this payment by Mr. Swan? For unless it be so, I can conceive of no principle upon which he can maintain the position now assumed for him. There seems to me no middle ground. If by the payment of the money an assignment was effected by operation of law, it was effected then, immediately upon the payment, and at once placed the party paying along side of the party paid, and equally entitled with him to participate in the common security; such however, I am very confident was not within the contemplation of the parties, and would not be in accordance with the principles of justice. It never was or could have been intended by these parties, that by paying this money Mr. Swan should be lifted to a level with the assignee of the mortgage, and if loss occurred, it should fall, in proportion, upon him and such assignee.

"It is very clear, that the right of substitution claimed for Mr. Swan, can derive no aid from the act of 1763, ch. 23. That act, as was observed by the Court of Appeals, in the case of *Creager vs. Brengle*, 5 *H. & J.*, 234, only conferring the right to make the assignment authorised by it, upon the original creditor; and not upon the assignee of such creditor; and therefore, if the right claimed in this case can be admit-

ted, it must rest upon the principle of equity, that a surety on paying the debt of the principal debtor, has a right in a court of chancery, to call on the creditor for an assignment of the claim against the principal, and all liens which he has given the creditor : a principle too firmly established in this State, to be for a moment called in question.

"The payment by Mr. Swan, in this case, was not to the original creditor, the Neptune Insurance Company, but to the Baltimore Life Insurance Company, the assignee of the first named company, and the Life Insurance Company could not, if disposed to do so, have made an assignment under the act of 1763, ch. 23, as was expressly adjudged by the Court of Appeals, in the case referred to.

"And it appears to me to be equally well settled in this State, that even when the payment is made by the surety, to the original creditor, an assignment under the act of the legislature cannot be demanded, unless the payment be in full. This was decided by the Court of Appeals, in the case of *Hollingsworth vs. Floyd*, 2 *Har. & Gill*, 87, and it was in the same case also declared to be settled doctrine in equity, that a surety paying the entire debt had a right in chancery to an assignment of the judgment against the principal debtor, and of all liens which the principal had given the creditor. And it was further said by the court in this last case, that : "It would not subserve the ends of justice, to consider the assignment of an entire debt to a surety as effected by operation of law, where he had paid but a part of it, and still owed a balance to the creditor; and this court would not countenance such an anomaly as a *pro tanto* assignment, the effect of which could only be, to give distinct interests in the same debt to both creditor and surety."

" If the doctrine announced in the case referred to be applicable to this, it puts an end to this part of the controversy, because Mr. Swan has paid but a very small portion of the debt, and if he is, upon principles of equity, entitled to an assignment, *pro tanto*, of the mortgage, we have the very anomaly which the Court of Appeals said they would not countenance.

" It is said, however, that the case of *Hollingsworth vs. Floyd* was a case at law, and that we are here in equity unfettered by those technical rules which sometimes are too stubborn to yield to considerations of justice and right.

" But though *Hollingsworth vs. Floyd* was a case at law, it came before the court upon a motion to quash an execution; and it is believed to be well settled, that upon such motions the courts exercise a *quasi* equitable jurisdiction, and feel themselves less restrained by technical rule than when exerting their ordinary powers; at all events, it is, I think, impossible to read the opinion of the court in that cause and not come to the conclusion, that neither at law or in equity could a surety call for an assignment from the creditor, or be clothed by mere operation of law, and upon principles of equity, with the rights of an assignee, unless he had paid the entire debt, and, of course, had wholly satisfied the claim of the creditor.

" The doctrine of *Lidderdale vs. Robinson*, 2 *Brock. Rep.*, 160, is in perfect harmony with that which prevails in this State. It certainly does not carry it any further, unless it may be supposed to be carried further by the determination that the same rule applied as between co-sureties; so far as the law of principal and surety is concerned, and the right of the latter to be substituted, to every equitable intent and purpose, in the place of the creditor whose debt he has discharged, the principles of the case of *Lidderdale vs. Robinson* are precisely those which obtain in our courts.

" But another objection, and, as it appears to me, one of great force, is made to this right of substitution claimed for Mr. Swan. This gentleman was in no way connected with the original transaction between Rebecca Dorsey and the Neptune Insurance Company; but after she had conveyed her equity of redemption to Edward H. Dorsey, Mr. Swan endorsed certain notes given by the latter to the assignee of the Neptune Insurance Company, for interest due upon the mortgage. The remarks of Chief Justice Marshall, in the case of *The Bank of the United States vs. Winston's Ex'crs*, 2 *Brock. Rep.*, 254, are well worthy attention in considering this question, and certainly are calculated to awaken serious doubts

with reference to the right of a party, not bound by the original security to be substituted to all the rights of the original creditor upon paying him the debt; and these doubts are strengthened in this case by the circumstance, that Mr. Swan never did become the surety of the original principal debtor, Rebecca Dorsey, but of Edward H. Dorsey, the assignee of the equity of redemption.

"But it is said, the second mortgagee is in no way injured by what Swan did, or by what is now claimed for him; that the whole amount of the prior incumbrance, principal and interest, must be paid before the second mortgage can be let in: and this of course is quite true. But it is equally true, that the interposition of Mr. Swan in paying this money has turned interest into principal, to the manifest prejudice of the second mortgagee, as upon examining the auditor's statement of claims plainly appears. The amount paid by Mr. Swan in interest amounted to $443.55, and this sum is now swelled by the interest which has accrued upon it to upwards of $560. It is most obvious, that a repetition of this operation from time to time for a series of years, as interest upon the mortgage debt falls in arrear, would most seriously affect the junior incumbrancer, and might, in process of time, exclude him altogether from the benefit of the security, or at all events very much impair his rights under it.

"I am therefore of opinion, that the right of substitution claimed cannot be maintained, and that the holder of this claim must take rank as a simple contract creditor only, and be treated accordingly."

From the order of the chancellor rejecting his claim to a preference over that of Patterson and others, passed in accordance with the preceding opinion, Swan appealed.

The cause was submitted to the court, (LE GRAND, C. J., TUCK and MASON, J.,) by *Thomas G. Pratt* for the appellees, at June term 1854, upon his brief, insisting:

That Swan, in respect of his endorsement and payment of the notes passed by Edward H. Dorsey to the Baltimore Life Insurance Company, in payment of the interest due upon the mortgage assigned to them by the Neptune Insurance Com-

22    v.7

pany, is not entitled to be considered as the equitable assignee of so much of that decree; and that by such endorsement and payment, he acquired no lien upon the estate sold or the fund to be distributed:—

1st. Because conceding that a *surety* who pays the debt of his principal is entitled to call on the creditor for an assignment of all the securities held by him, it will be insisted, that the present case is not brought within that principle, Edward H. Dorsey not being the debtor, and James Swan not being the surety for the debt. *Winder vs. Diffenderffer*, 2 *Bland*, 166. *Hall vs. Cresswell*, 12 *G. & J.*, 50. *Heighe vs. Farmers Bank*, 5 *H. & J.*, 68. *Bank U. S. vs. Winston*, 2 *Brock. Rep.*, 254. *Semmes vs. Naylor*, 12 *G. & J.*, 35S.

2nd. Because Swan could not claim an assignment of the decree under the act of 1763, ch. 23, the Baltimore Life Insurance Company, to whom the alleged payment was made, not being the original creditor, but the mere assignee of the Neptune Insurance Company. *Creager vs. Brengle*, 5 *H. & J.*, 239, 240.

3rd. Because a partial payment, even by a surety, does not entitle him to a *pro tanto* assignment. *Hollingsworth vs. Floyd*, 2 *H. & G.*, 87.

The court being under the impression that the record was at the same time submitted by the appellant, decided the case and passed their decree at that term, MASON, J., delivering the opinion of the court:

" We affirm the order appealed from in this case for the reason, that Mr. Swan was no party to the original transaction, and because there is nothing in the original mortgage which provides for such a state of things as to make him a surety, so as to subrogate him to the rights of the original mortgagee. He was but a volunteer and not a surety, and as such not entitled to the priority he claims; as the chancellor has remarked, he never did become the surety of the original principal debtor, Rebecca Dorsey, but of Edward H. Dorsey, the assignee of the equity of redemption.

" We pronounce no decision in regard to the other portions of the chancellor's opinion.

*Order affirmed, with costs.*"

Afterwards, at the same term, *William F. Frick* and *Thomas Donaldson*, counsel for the appellant, moved to strike out this decree, upon the ground that the case never was properly before the court for their judgment, and that there was a clear mistake and misunderstanding in reference to the submission. This motion they argued in writing at December term 1854, before the same judges, accompanied also by a written argument on the merits of the case, in substance as follows:

The chancellor, in his opinion, argues, that Swan is not entitled to be substituted to the mortgage security held by the insurance company:—1st. Because he does not occupy the position of a *surety* entitled to substitution, but that of a mere *volunteer*. 2nd. Because, even if he be properly a surety, he has no rights of substitution, having paid only a part of the debt, and that the court cannot recognise so great an anomaly as a *pro tanto* assignment.

At the time Swan was asked to endorse the interest notes, Edward H. Dorsey was the owner of the property, and the insurance company the owners of the mortgage on it. The latter had a rightful claim against the former, personally, for both the principal of the debt and the interest in arrear, and the mortgage was their security for the payment of both. There was a present decree for sale and an agreement by the company for present forbearance of proceedings, in consideration of the receipt by them of Dorsey's notes, with Swan as surety for the interest in arrear, and Dorsey failing to pay, Swan was obliged to pay them as his surety. He did not therefore pay them as a *volunteer*, but as one *compelled* in law to pay.

Undoubtedly the doctrine of substitution, though most large and liberal in favor of sureties, is confined to them, and does not extend to volunteers. But that means of course volunteers *in payment*, persons who are under no legal obligation to *pay* the debt, and between whom and the principal debtor, therefore, the relation of principal and surety does not exist. It does not mean that persons who volunteer *to become sureties* are not entitled to subrogation; for in one sense *every surety is a volunteer*, not being under any legal obligation to

become a surety; and it is precisely because it is a volunteer act, a moral rather than a legal obligation, that the rights of a surety are put on so high a footing.   His claim to substitution is not on the ground of *contract*, but on principles of *natural justice and equity*.

Now undoubtedly Swan was the *surety* of Dorsey on these notes.   Whether he *voluntarily became so* is not the question. He is not in law a *volunteer* in the payment of them, for the very reason that he was the surety for their payment.   Put out of view the question, whether he was entitled to be sub-stituted *pro tanto*, and assume that he endorsed notes to the company, at Dorsey's request, for the *whole debt*, in consid-eration of forbearance of proceedings on the decree, and that, as such endorser, he had been compelled to *pay the whole debt, would he not have been entitled to claim an entry of the decree to his use?*   Undoubtedly he would, unless there be something in the idea, that to entitle him to substitution he should have been the surety for the debt *at the time* the mort-gage was given.   The chancellor assumes this point to have been decided by Chief Justice Marshall, in *Bank of United States vs. Winston, 2 Brock.*, 254.   Now it is respectfully submitted, that the chief justice does not undertake to decide anything in that case on this point, but expressly excludes the conclusion that he meant to do so; and if he did, it would amount to no more than what Lord Eldon has said, in *Copes vs. Middleton,* that if a surety in a bond pays it the *bond is gone,* and the surety is but a simple contract creditor of the principal debtor.   But he says, at the same time: "If a mort-gage is taken for the bond, the surety paying the bond stands in the shoes of the mortgagee.   *Without the mortgage there are no shoes for him to stand in.*"

But it is quite clear, on authority, that if there be a mortgage or other security for a debt, a surety who pays that debt is substituted to the rights of the principal creditor as to the security, whether the suretyship be entered into *before* or *at the time*, or *subsequent* to the giving of the mortgage.   3 *Mylne & Keene,* 183, *Hodgson vs. Shaw,* in 8 *Eng. Cond. Ch. Rep.*, 338.

22 *Vermont*, 284, *McDaniel vs. Flower Brook Manf. Co.* But there ought to be no doubt on this point after the emphatic language of this court, in the case of *Semmes vs. Naylor*, 12 *G. & J.*, 364, where it is said, that the surety's title to substitution "would be equally valid, whether its existence was prior, cotemporaneous or *subsequent* to the time of his suretyship." The obvious justice of this rule grows mainly out of the fact, that the surety has a right to insist that the creditor shall hold and retain his securities as *trustee* for the surety. The creditor has no right to part with them without his assent. As the chancellor says, in *Hayes vs. Ward*, 4 *Johns. Ch. Rep.*, 123 to 130, the taking of security gives confidence to the surety and lulls him to sleep. The knowledge of securities already given, induces the surety to become bound, and while he has the right to hold the creditor responsible for parting with them to his injury, whether obtained *before* or *after* his suretyship, so he has a right, on payment by him, to be substituted to them. Swan would probably never have become surety on these notes, if he had not known and relied upon the fact, that the company had a mortgage security for them in addition to his endorsement. He did not pay them as a volunteer, but as a *surety*, and is therefore entitled to stand in the shoes of the mortgagee, unless the second objection made by the chancellor, that he cannot be substituted *pro tanto*, is valid.

On this point let it be remarked, that we do not claim the right to an assignment under the act of 1763, ch. 23, as seems to be supposed, but we put our claim on the equitable doctrine of substitution. It is perfectly clear that a *pro tanto* substitution, whether under the act referred to or by the operation of equitable principles, would be an anomaly, *provided* it had the effect of giving distinct rights, in the same security, at the same time, both to the creditor and the surety; and clearly, a surety having paid part of a debt only, and while a balance remains unpaid, cannot rightfully claim to share with the creditor the benefit of other securities in his possession, for the effect of such claim might be to deprive the creditor in

part of the benefit of such securities.   But is there any anomaly
in giving a surety, who has been compelled to pay *part* of a
debt, the right to subrogation and reimbursement out of the
creditor's securities *after the creditor has been paid in full?*
Does the right of substitution exist only where a surety is
bound for the *whole* debt and has paid the *whole* debt?   The
distinction is this:   The right in question does not arise until
the creditor is fully satisfied.   Until then his securities cannot
be interfered with.   But whenever the retention or return of
securities by him would be against equity and good conscience,
then the rights of the surety intervene, and whether he has
paid all or a part only of the principal debt, he is then entitled
to an assignment or substitution *pro tanto* for his reimburse-
ment;   that is to say, "to the extent" of his payments.   These
principles are settled by the case of *Union Bank vs. Edwards*,
1 *G. & J.*, 365.   Stansbury mortgaged to the Union Bank
his property, to secure notes to be discounted for his use.
Certain persons, *after the mortgage*, became sureties to the
bank on *some* of these notes.   They claimed, on payment by
them, (the property having been sold and the proceeds in
court,) to be substituted to the bank's claim against the mort-
gaged fund, *pro tanto*.   The court said they could not claim
to be substituted, *until the claims of the bank on the other notes
were fully paid*.   But, "if after satisfying all the debts due to
the bank on Stansbury's notes, by them discounted, there
should remain a surplus of the mortgaged fund: to that amount
might the drawers and endorsers of his accommodation notes,
who had made payments to the bank, seek to be substituted."
(We here refer to the manuscript opinion of Judge Dorsey in
this case, and not to the printed volume, in which there are
two typographical errors, which alter the whole meaning of
the passage; that is, by the omission of a (:) after the word
"fund," and the insertion of an (?) after the word "substi-
tuted.")   It is perfectly clear, that Judge Dorsey meant to say
that the sureties *had* a right to substitution after the bank's
debt was paid, and does not that judgment decide this case?—
for observe, these were sureties *after* the mortgage given, no

parties to the *original* security, as much *volunteers* as Swan here; and further, were sureties for a *part* of the debt only to the bank. The true doctrine on this subject is most clearly given by Judge Eccleston, in *Grove vs. Brien*, 1 *Md. Rep.*, 454: "A partial payment by a surety does not operate as an assignment to him *pro tanto*, so as to enable him to exercise any control over the judgment, the original creditor having that power *till he is fully paid.* But the surety possesses an *inchoate equitable interest* to the extent of his payment, which may be released or transferred." Of course, after full satisfaction of the principal creditor, the surety's inchoate equitable interest is enlarged into a legal right to substitution or assignment *pro tanto*, as he has paid. It is such a substitution alone that we claim in this case. We claim precisely that which the company would have been entitled to claim against the mortgaged fund, provided we had *not* paid the notes on which we became the surety. And this is a complete answer to the chancellor's suggestion, that if our claim were allowed it would have the effect of turning interest into principal, to the prejudice of the second mortgagees.

In reply to this argument, *Thos. G. Pratt*, for the appellees, said, he did not deem it necessary to refer to any additional authorities to those already cited by him on his brief, except the decision of the chancellor in this case, reported in 3 *Md. Ch. Dec.*, 338, and to the opinion of this court affirming that decision, now on file in the Court of Appeals.

TUCK, J., delivered the opinion of this court upon this motion.

This case was decided at December term 1853, under the impression on the part of the court that the record had been submitted by the appellant's counsel. We are satisfied that this resulted from a misunderstanding, and that the appellant is entitled to have the case reconsidered on the written arguments since filed.

After another examination of the questions, with the authorities now referred to, we see no reason to change the decree heretofore passed. It may be that the appellant, when he

endorsed Dorsey's notes, supposed that he would have the benefit of the security held by the creditor; but if this was his view, he should have entitled himself to such indemnity by an agreement to that effect, or by an assignment, *pro tanto,* when the notes were paid. We think it very improbable that the creditor held that view of their respective relations to the mortgage. In the absence of an assignment, in fact, we could not sanction the appellant's claim to substitution, *pro tanto,* without disturbing the well recognised doctrine in this State upon the subject of equitable assignments, which the chancellor has correctly set forth in his opinion.

We have examined the original opinion in the case of the *Union Bank vs. Edwards,* and find that the report, 1 *G. & J.,* 365, is a misprint, as stated in the notes of the appellant's counsel. The error is in the punctuation. It should read: "If, after satisfying all debts due to the Union Bank on Stansbury's notes, by them discounted, there should remain a surplus of the mortgage fund: to that amount might the drawers and endorsers of his accommodation notes, who had made payments to the Union Bank, seek to be substituted." That was announced, as we understand the opinion, to be the rule as between parties in the predicament of Mrs. Edwards and her debtor, and not as applicable where, as here, there is a junior incumbrancer claiming the surplus after payment of the first mortgage. In such a case, however, we suppose that the principles of substitution would require payment in full of the debt on which the equitable assignment might be claimed: in which view of the decision it does not aid the appellant's case.

The motion to open the decree is overruled.

*Motion overruled.*