## PARSONS

*v.*

## JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

<hr>

INSURANCE AGENTS; VOLUNTARY PAYMENT OF DEBT OF A STRANGER;
SUBROGATION; ASSIGNMENT OF CHOSES IN ACTION.

Where a life insurance agent after delivering a policy of insurance
to the insured upon the latter's promise to pay the first year's
premium at a later date, himself voluntarily paid the premium
to the company, less his commission, but without the knowledge
of the insured and without disclosing to the company that the
payment did not come from the insured, and the policy lapsed
for failure to pay the second year's premium, an action cannot
thereafter be maintained against the insured in the name of the
company, to the use of the agent, to recover the first year's
premium, although the agent before the action is brought pro-
cures an assignment to himself from the company of its interest in
such premium; nor can the agent maintain such an action in his
own name to recover such premium; Mr. Justice MORRIS *dis-
senting.*

No. 1183. Submitted April 9, 1902. Decided June 23, 1902.

HEARING on an appeal by the defendant from a judgment
of the Supreme Court of the District of Columbia, upon the
verdict of a jury, in an action by an insurance company, to
the use of another, to recover the amount of the first year's
premium on a policy of insurance.　　　　　*Reversed.*

.The COURT in the opinion stated the case as follows:

.This is an action at law commenced November 26, 1900, by The John Hancock Mutual Life Insurance Company of Boston, Massachusetts, for the use of A. B. Douglas against James L. Parsons to recover the sum of $423.50, being the first year's premium upon a policy of $10,000 alleged to have been issued to and accepted by said Parsons on May 9, 1899.

Douglas was the agent of the insurance company for the District of Columbia, and his testimony tended to show that he agreed with Parsons upon the terms of the policy and delivered it upon Parsons' promise to pay the premium as soon as he could obtain some money upon a building contract then in course of execution. By the terms of the policy the premium was payable in advance.

Parsons denied the acceptance of the policy left with him and the promise to pay the premium at any time.

It does not appear that the insurance company was informed of this arrangement between its agent and Parsons. August 1, 1899, Douglas, in making return of the business transacted with him, premiums received, and so forth, settled with the company by crediting himself with 70 per cent of the said premiums on account of his stipulated commission, and paying over the remaining 30 per cent in cash. Douglas admitted that he made the settlement without the knowledge or request of Parsons, nor did he claim that the company, at the time of receiving the money from him, was aware that Parsons had not in fact paid the said premium or any part thereof. There was no attempt at payment of the next year's premium, and nearly six months after the consequent lapse of the policy, namely October 30, 1900, the said Douglas obtained from the insurance company a formal assignment of all of its right, title, interest, etc., in and to the said first year's premium, which is the basis of the action for his use.

ᶜ [The further material facts will be found stated in the opinion.— REPORTER.]

*Mr. Sidney T. Thomas* for the appellant.

*Mr. Charles Cowles·Tucker* for the appellee:

The contention of the appellant is that the payment of the premium by Mr. Douglas operated to extinguish the obligation on the part of the appellant to pay the premium to the company, and that therefore there can be no recovery by the company of the premium in this action. In other words, the appellant says that although he has never paid his debt, or authorized any one to pay it for him, he can escape its payment by setting up the payment of it by a third party, and this, although he refuses to ratify the payment made for him by Mr. Douglas, so as to allow the latter to sue him. (In passing, it should be observed that he does not plead payment, but pleads the general issue.)

Although he expressly refuses to ratify the payment made by Mr. Douglas for him, he seeks in this indirect way to take advantage of that payment for his own benefit. It is submitted that the mere statement of the position that he now assumes is a sufficient answer to his contention.

A voluntary payment by a stranger cannot be set up as a defense to an action by the original creditor. *Lucas* v. *Wilkinson,* 1 H. & N. 420; *Kemp* v. *Balls,* 10 Exch. 607; 24 L. J. Exch. 47; *Muller* v. *Eno,* 14 N. Y. 605; *Clow* v. *Borst,* 6 Johns. 36. Payment by a stranger for a debtor and on his account and afterwards ratified by him is a good payment. *Belshaw* v. *Bush,* 11 C. B. 191. But payment by a stranger, without authority, prior or subsequent, of the debtor, is not. *Jones* v. *Broadhurst,* 9 C. B. 173; *James* v. *Isaacs,* 12 C. B. 791; *Cooke* v. *Lister,* 13 C. B. (N. S.) 543; *Goodwin* v. *Cremer,* 18 Q. B. 757. And such ratification will be good though not made until after the commencement of an action, as *by a plea of payment. Belshaw* v. *Bush,* 11 C. B. 191; *Simpson* v. *Egginton,* 10 Exch. 845. See, also, *Whiting* v. *Mutual Ins. Co.,* 15 Md. 297; *Merryman* v. *State,* 5 H. & J. 423.

The case of *Gillette* v. *Insurance Co.,* 39 Ill. App. 284, is very similar to the case at bar. In that case the agents of an insurance company issued a policy of insurance which was accepted by the insured, but on which the insured failed to

pay the premium when due, and the agents, under their contract with the company, paid the premium.   In an action brought in the name of the company for the use of the agents, against the insured, to recover the amount of the premium, it was held that the insured was liable, as a party defendant cannot defeat a suit by showing a want of interest in the nominal plaintiff.   That case, like the case at bar, was tried in the lower court upon the question of whether the insured had accepted the policy.   This defense, however, was abandoned, as in the present case it necessarily is, on the appeal, and in the appellate court the insured insisted that because the claim of the company was not formally assigned to the agents, there could be no recovery; that there was no proof that the company ever vested the agents with the power to use its name in the suit, and that the company, by the action of the agents in paying the premium, had been paid and its right of action was gone.   Answering these contentions, the court said:

" The answer to all these suggestions is that as to appellants, they have never paid the appellee anything, and no one has paid anything to it for them or at their request, and hence they have never in any way paid the debt or extinguished it as against them; and the McWethey Brothers (the agents) certainly never intended to extinguish it and make a present of it to appellants; they simply paid or advanced the amount to the appellee as their agents under their agreement with it as a kind of guarantors of the prompt payment of all premiums and therefore ought, in equity, to be subrogated to the rights of the appellee in the claim under the policy.   Equity would require that the latter should hold the policy for the usees' protection and the law will presume that it did.   The payment of the premium under the agreement by the agents of appellee, would be the only assignment the law would require to give the agents the right to sue on the policy in the name of appellee for their own use.   And this is a matter in which the appellants have no concern.   They owe the premium on the policy and it matters not to them that the money when collected

goes to the usees instead of the appellee. If appellee does not complain of the manner of bringing the suit, it seems to us that the appellants should not be heard to interpose objections. It is and should be a rule of law that a party defendant cannot defend a suit by showing a want of interest in the nominal plaintiff. *Alsook* v. *Cain,* 10 Johns. 400."

The appellant attempts to distinguish the case just cited from the case at bar by the fact that in the former case there was a special agreement between the company and the agents which gave the agents a right to sue in the company's name where they had paid the premium. It is not at all clear that the arrangement between the company and its agents in that case was not identical with the arrangement between the appellee and Mr. Douglas. In both cases the company required its agent to cancel the policy or make prompt returns of the premiums; but, however this may be, the only materiality of such an agreement in that case was to determine the question of whether or not the action could be maintained to the use of the agents *without* a formal assignment of the company's claim to the premium. The Illinois court held, in effect, that the agreement between the company and the agents was such that no formal assignment was necessary. In the case at bar there *was* a formal assignment, and therefore this question cannot be properly raised. Certainly, however, the appellant is in nowise interested in this matter.

In conclusion, it is respectfully submitted that if the appellant had died during the year that he retained this policy of insurance, which was delivered to him upon his express promise to pay the premium and because of a belief that he would act in good faith, and which was allowed to be retained by him uncanceled because of his continued promises to pay, the beneficiary would have compelled the company to pay the risk, and the authorities are clear that the company would have been liable. This being so, the appellant should not be allowed to escape the payment of this just obligation.

Mr. Justice SHEPARD delivered the opinion of the Court:

Certain instructions given to the jury respecting the existence and binding nature of the alleged agreement between Parsons and Douglas, that were given to the jury on behalf of the plaintiff, were duly excepted to and have been made the grounds of several assignments of error.  In the view that we have taken of another question at the very foundation of the case, the questions raised by the foregoing may be passed; and it will be assumed, without, however, deciding, that, in accordance with the verdict, the policy was accepted by Parsons and became binding for the space of one year upon the company by the terms of delivery made by its agent, whether with its knowledge and consent or not.

The plaintiff's own evidence discloses that he was under neither legal nor moral obligation to Parsons on the one hand, or the insurance company upon the other, to pay the premium due by Parsons.  It also discloses that he made the payment in the manner indicated without the knowledge even of Parsons, much less his request or consent.  In this state of the case the court should have directed the jury to return a verdict for the defendant, the refusal of which has been assigned as error.

The form of the plaintiff's action indicates his apprehension of what is quite clear under the facts stated, namely, that he could not maintain an action of assumpsit against Parsons for money paid, expended, etc, for his use.

" It is a well settled general rule, that no one can be allowed to intrude himself upon another as his surety, and therefore if a man´ voluntarily pays the debt of another, without any agreement to that effect with the debtor, he cannot take the place of the creditor, or in any way recover the money so paid of the debtor; because the law does not permit any one man thus, officiously and without solicitation, to intermeddle with the affairs of another."    *Winder* v. *Diffenderfer,* 2 Bland, 166, 199.  See, also, *Stokes* v. *Lewis,* 1 T. R. 20; 2 Gr. Ev. Sec. 114; *Ross* v. *Silverman,* 53 N. Y. S. 901; *Ross* v. *Rubin,* 54 Idem, 1036; *Woods* v. *Gilson,*

17 Ill. 218; *Richards Brick v. Co. v. Rothwell,* 18 App. D. C. 516, 541.

Upon the same principle, the payor, Douglas, could not claim to be the equitable assignee of the demand of the insurance company against Parsons by reason of his voluntary payment of the premium. Courts of equity uniformly refuse to interpose the fiction of equitable assignment by subrogation on behalf of a mere volunteer and intermeddler. *Ætna Life Ins. Co. v. Town of Middleport,* 124 U. S. 534; *Richards Brick Co. v. Rothwell,* 18 App. D. C. 516, 541.

By bringing his action in the present form, the real plaintiff cannot secure a more advantageous position. What he could not do indirectly by the aid of equity, or by direct action of assumpsit at law, he cannot do indirectly at law by suing in the name of the original creditor for his use as assignee of the demand. To maintain the action as assignee of the demand it was incumbent upon him to prove payment with that intent, and a like receipt and acceptance of the money by the creditor. The plaintiff's own testimony precludes the idea of payment with such intent. There is not the slightest pretense that he informed his principal of the actual condition of affairs. Evidently the insurance company received its thirty per cent of the premium due by Parsons in a settlement with its agent upon the assumption that the premium had been collected by him from Parsons.

Presumably an insurance company pays the enormous commission of seventy per cent of the first year's premium in contemplation of a *bona fide* insurance likely to be kept alive from year to year during the life of the insured; and it is not at all probable that it would have approved an arrangement for the chance of carrying Parsons one year only for the actual sum received.

Be this as it may, however, it is clear, that the insurance company was not informed of the actual facts at the time that it received the thirty per cent of the premium as having been paid by Parsons, and that it neither made, nor

contemplated making an assignment to Douglas of any demand whatever against Parsons.

Douglas, as we have seen, expressly disclaimed making the payment at the request or with the knowledge of Parsons. Evidently he paid over the money as having been collected of Parsons, stimulated by his more than two-thirds interest in the premium and the reasonable expectation, no doubt, that Parsons would pay. him as promised before the expiration of the year, namely, May, 1900. Without a full disclosure of the facts of Parsons' default, of his assumption of the latter's obligation and payment for his benefit, and the express consent of his principal, the creditor, he could not have acquired a title to the debt due by Parsons. *Brice* v. *Watkins,* 30 La. Ann. 21, 23; *Kitchell* v. *Mudgett,* 37 Mich. 81, 86; *Shinn* v. *Budd,* 14 N. J. Eq. 234, 237; *Woods* v. *Gilson,* 17 Ill. 218; *Swan* v. *Patterson,* 7 Md. 164, 165, 176.

The subsequent formal written assignment made by the insurance company on October 30, 1900, is entitled to no weight whatever. This was made considerably more than a year after the settlement with Douglas, wherein the Parsons premium had been accounted for, and more than six months after the policy had expired by failure to pay or arrange for the second year's premium.

It was clearly an afterthought. The company ran no risk in then fully recognizing the existence of the policy for the year long since expired. Whatever its purpose, it could not relate back to, reopen and change the character of the closed transaction out of which the plaintiff's claim arose and by the facts of which his rights must be determined.

The decision most strongly relied upon to sustain the judgment below is founded upon a very different state of facts. *Gillett* v. *Insurance Co.*, 39 Ill. App. 284.

In that case the agents made a similar arrangement with a person to whom they delivered a policy of fire insurance, and which they did not cancel for nonpayment of premium. The contract between the company and the agents required

the latter to make monthly settlements and bound them expressly to pay all uncollected premiums on outstanding and uncanceled policies; and provided " that if the agents shall advance premiums which the insured failed to pay, the agents will be subrogated to such rights as the insured had by the terms of the insurance contract to receive the premiums."

An action for a payment made under this contract was clearly maintainable in the name of the insurance company for the use of the agents.

The final proposition, on behalf of the appellee, is, that a voluntary payment by a stranger cannot be set up as a defense to an action by the original creditor. A sufficient answer is, that this is not an action by the original creditor in bar of which the debtor has pleaded payment by a stranger.

The insurance company is not suing for a debt due it, but lends its name as nominal plaintiff to the real plaintiff, Douglas, to whom it has attempted an assignment of the debt. His case fails on his own pleading and proof, and not upon a special plea in bar on behalf of the defendant.

For the reasons given, we are of the opinion that the court erred in refusing to direct the jury to find a verdict for the defendant; and the judgment will be reversed with costs and the cause remanded for a new trial in conformity with this opinion. It is so ordered.                    *Reversed.*

Mr. Justice MORRIS dissenting:

I am unable to concur in the opinion of the majority of the court in this case. That opinion assumes, in accordance with the verdict of the jury, that the policy of insurance mentioned in the proceedings was accepted by the appellant Parsons and became binding upon the insurance company; and yet that the insured was under no liability whatever to pay the premium, upon the consideration of which the policy was issued, either to the insurance company or to any one else. And this conclusion is reached on the ground

of some transactions between the insurance company and its agent Douglas, with which Parsons had nothing to do, of which he was totally ignorant, which in no manner affected his rights, and which he never accepted. This seems to me to be a proposition so extraordinary that I may be excused for declining to yield acquiescence to it.

In my opinion there is not here any question of subrogation, or of an attempt by one person to become the creditor of another against the will of the latter. Douglas, of course, could not have forced himself upon Parsons as a creditor, so as to be able to maintain a suit against him; and this is not a suit by Douglas against Parsons. This is a suit by the company against Parsons for that which, by the opinion of the majority, is conceded without qualification to be a liability of Parsons to the company; and I am unable to see how that liability can justly be defeated because for a valuable consideration the company has assigned the claim to its agent Douglas or to a third person. It is of no consequence to Parsons when or why or to whom the claim was assigned by the company. Subject to the reservation that in this District the suit was required to be instituted in the name of the company, and therefore that Parsons was entitled to all his rights of defense, the law allows assignment at any time to any one for any proper consideration; and such assignment, unless it in some manner infringes the rights of the debtor, is not matter which he can set up in defense of the action. The question in the suit is not whether the insurance company has received security or payment of its debt from its agent or some other person, with whom the debtor has no connection, and whom in fact he repudiates, as he does here; but whether the company has received payment from its debtor, the insured. The insured cannot set up payment by a third person as a defense, and at the same time wholly repudiate the action of such third person as unauthorized.

It seems to me that this proposition is so plain that it would be useless to expend argument in elucidation of it.

A motion by the appellee for a rehearing was denied.