### WALSH ET AL V. RICHARDSON ET AL.

1. The doctrine of subrogation, originating in the equity of one secondarily liable (as a surety) who pays the debt and becomes thereby entitled to the benefits of any securities held by the creditor against the principal debtor is extended to one who is compelled to pay off a prior lien to protect his security, etc. The right can only be made effective by laying hold of dormant equities already existing.
2. The right can not be invoked in favor of a third party who pays off a judgment lien except upon an agreement that the judgment shall be assigned or kept on foot for his benefit and in such wise as to place him in the shoes of the judgment creditor so as to respond proportionably for any deficiencies upon sale under execution.
3. The mere loaning of money to a judgment debtor does not operate to transfer the lien even though so understood by the parties.
4. Fraud in the creation of the debt may inure to the benefit of an incumbrancer of one property who pays taxes upon another property as against a judgment creditor of the whole, as creating an equity for subrogation to the extent of the money thus paid.

HOSEA, J.

A residual question of some difficulty arises in this case upon the following facts:

The defendant, Richardson, claiming to have duly paid

off a mortgage given by him to the Cincinnati Savings & Loan Society, upon certain lots on Central avenue in Cincinnati (the County Records showing an apparent cancellation in due form), obtained a loan of $5,000 from the Walnut Hills Savings & Loan Company, securing it by a mortgage upon the same property, representing it to be a first mortgage, excepting for the lien of a general personal judgment held by plaintiffs, and to the removal of which lien he applied $1,692.84 of the money loaned—$864.20 of said money being applied to reimburse the judgment creditor for taxes advanced, which were a lien on property on *Colerain* avenue, as appears by the following entry in this suit made July 18, 1901:

"Now come the plaintiffs and acknowledge that the defendant, Jacob J. Richardson, has paid to them $864.80 in full for the amount due them for taxes advanced on the land described in the petition, with interest to July 17, 1901; and has also paid to them $1,692.84 on account of the judgment and decree herein on the mortgage notes; leaving due thereon $9,000, with interest thereon from July 17, 1901, payable semi-annually.

"By consent of plaintiffs the lien of said judgment is hereby postponed to the lien of a mortgage for $5,000 made by Jacob J. Richardson and wife, and Jane Carey, to the Walnut Hills Savings & Loan Company, dated July 15, 1901, upon the following real estate in said county, viz:

"Lot 10, and parts of lots 9 and 11, in Morris and Gordon's subdivision, said property being 63 feet 7¾ inches front on the west side of Central avenue near Mohawk Bridge."

It subsequently transpired that the apparent cancellation of the mortgage on said described property, held by the Cincinnati Society, was a forgery, admitted by Richardson; and said mortgage was duly foreclosed and exhausted the property, leaving the mortgage of the Walnut Hills Company worthless.

Meanwhile, however, the residue of plaintiff's judgment was more than realized out of its mortgage security upon

the Colerain avenue lots, leaving a balance, claimed by the trustee in bankruptcy in behalf of general creditors of Richardson.

The Walnut Hills Building Association contests this, claiming to be subrogated to the rights and lien of the judgment creditor as against this fund, by virtue and to the extent of its payment as above set forth, which fund, in excess of the security, was realized by the sale.

It will be obvious that the two sums, viz.: the $864.20 used to pay the taxes on the Colerain avenue lots, and the $1,692.84 used to extinguish or postpone the lien of the judgment on the Central avenue lot, are quite distinct in the purview of the doctrine of subrogation, inasmuch as they have relation to different liens—one the lien of a mortgagee who advances taxes on the mortgaged property, and the other the lien of a personal judgment upon the estate of the debtor.

The doctrine of subrogation, originating in the equity of one secondarily liable (as a surety), who pays the debt and becomes thereby entitled to the benefits of any securities held by the creditor against the principal debtor, has been long applied in favor of a junior incumbrancer, who is compelled to pay off a prior lien to protect his security, or where a right of subrogation is acquired by fraud in the creation of the debt. The right can be made effective, however, only by laying hold of dormant equities already existing, for the court can not create new ones.

With respect to judgment liens paid off by a third party, however, the weight of authority seems to be that, except in case of an agreement that the judgment shall be assigned or kept on foot for the benefit of the party paying, the payment extinguishes the judgment, and consequently nothing remains through which subrogation can be worked out.

In *Sanford* v. *McClean*, 3 Paige Ch., 122, the principle is illustrated in a statement quoted in many later cases. The court says:

"If the complainant had actually advanced the money to pay off the judgment, it is doubtful whether he would have

been equitably entitled to be substituted in the place without some conventional arrangement with those creditors. It is only in cases where the person advancing the money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in place of the creditor as a matter of course, without any agreement to that effect. In other cases, the demand of a creditor which is paid with the money of another and without any agreement that the security shall be assigned or kept on foot for the benefit of a third person, is absolutely extinguished."

The foregoing language is quoted, *in haec verba,* in 1 Sanford's Ch., 385, *Banta* v. *Garmo et al,* where the facts are somewhat analogous to those at bar.

B loaned money to A, to pay off a prior mortgage, and himself took a mortgage to secure payment. The first mortgage was duly canceled. An intervening judgment was levied on the land and sale had by the sheriff and the judgment entered satisfied of record—which entry misled the attorney of B. After date of the second mortgage the sheriff conveyed the property to the purchaser, and B claimed to be subrogated to the rights of the first mortgage as against the purchaser. The court says:

"The first mortgage was paid so far as the parties were concerned. No one would have thought of resuscitating it, but for discovery of defendant's title under the judgment. * * * The attempt is now made to subrogate the complainant to the rights which the first mortgagee had and thus give him a lien prior to defendant's. * * * A further argument is made in behalf of complainant on the ground of mistake in canceling the prior mortgage. * * * The mistake consisted in the belief that complainant was acquiring an unincumbered title by his mortgage. This kind of mistake is of frequent occurrence, but I never heard of an instance in which the suffering lender was permitted to trace back his money into the hands of a stranger who had received it in discharge of an elder lien, than the one newly discovered, and thereupon to set up said stranger's lien to

overreach the intervening incumbrancer. * * * No case can be found where a third person, after voluntarily and intentionally discharging a lien in which he had no prior interest, and on the faith of another security, has been permitted, as against other incumbrances to revive such lien on ascertaining that his own security was worthless.

"And if the question were open, I would at once say that the evils which would flow from the adoption of such a principle, would overbalance the hardship of particular cases which occur under the rule of law, as now settled."

In 71 Tex., 596, *Terry* v. *O'Neal,* it is held that, except by an understanding between parties, whenever a judgment is to be kept in force for benefit of the party paying, payment will extinguish it.   The court says:

"After the demand of Rogers (the judgment creditor) had been satisfied by Taylor, he had no interest to subserve by keeping the judgment in force; and it is evident he did not understand it was to be kept in force; for the security relied upon by him was the land conveyed to him by Rogers."

In *St. Francis Mill Co.* v. *Lugg,* 83 Mo., 476, a similar ruling is made, and the following statement is cited from Freeman on Executions, in the opinion:

"The voluntary payment of an amount due on judgment or execution, if made unconditionally and without reservation of right to keep the judgment alive, is unquestionably and irrevocably a satisfaction of the writ, no matter by whom payment is made."   (Section 444.)

In *Swan* v. *Patterson,* 7 Md., 164, the point is made that the assignment, to be a valid basis of subrogation, must be such as to place the third party on an equality with the judgment creditor, so as to be required to respond proportionably for any deficiencies upon sale under execution. See, also, 194 Mich., 527, *Draper* v. *Ashley,* 35 Atl., 897, *Gove* v. *Bryan.*

The case of *Unger* v. *Leiter,* 32 O. St., 210, is in the same

line of principle, and seems to be conclusive as applied to the sum of $1,692.84, paid upon the judgment. The first syllabus of the case is as follows:

"The mere loaning of money to a judgment debtor to be applied by him in part satisfaction of a judgment which is a lien upon the debtor's land, does not operate to transfer such lien in whole or in part to the lender, even though it was understood between the parties to the transaction that it should have that effect."

And also analogous principles were applied in a case of payment of notes in 63 O. St., 374.

Possibly a different question might have arisen, were the Central avenue lots still in possession of Richardson, and the claim made in respect of the judgment-lien upon that property, in view of the fraud of Richardson, whereby the loan was obtained. The fraud, however, had relation to the particular property and the *pro tanto* payment upon the judgment had reference only to relieving the lien of the judgment upon that property as though such lien were completely subdivided out of the general lien. The principle of subrogation enables the court to act only through dormant equities that inhere in the transaction itself, and can not be extended over a complete break in the chain of equitable sequence to include matters not in contemplation of the parties at the time. 135 Ala., 239, *Bigelow* v. *Scott*.

As to the claim of the $1,692.84, therefore, the claim of the W. H. Co. must be denied.

As to the sum of $864.20 applied to the taxes on the Colerain avenue lots, the claim to subrogation seems to rest upon a better foundation. Thus in *Bolman* v. *Lohman,* 74 Ala., 507, it is held that:

"The lender of money used in payment of a mortgage, or other incumbrance on land, is not entitled on that account alone to be subrogated to the rights of a mortgagee, but if advanced for this purpose with the just expectation of obtaining a valid security on the property for its repayment, or, if the mortgage given for its repayment is defective, or

the money was obtained by fraud and misrepresentation, the lender is subrogated to the security of the mortgage, which his money has discharged."

Similar principles are set forth in 39 Iowa, 651; 93 N. Y., 225; 32 N. J. Eq., 104.

In the present case, the money borrowed was used to pay off the taxes, which were a lien superior to plaintiff's judgment, on the land upon which the judgment was primarily secured, and by the sale of which the judgment was discharged and the fund now in court realized. The lien was re-created in plaintiff by his advances, and in respect of this lien, as it seems to me, the right of subrogation should be made effective in favor of the Walnut Hills Company by reason of the fraudulent misrepresentation of Richardson in securing the loan and the consequent worthlessness of the security given. The fund realized from the sale in excess of the judgment may fairly be attributed, *pro tanto,* to the payment of taxes, and therefore represents this borrowed money.

As to the sum of $864.20, with interest from July 18, 1901 (the date of entry), the claim of the Walnut Hills Company will be allowed.

Counsel will submit entry in accordance with this opinion.

*Thornton M. Hinkle,* for plaintiff.
*Pogue & Pogue,* for defendant.